IRVEN STANLEY & a. v. BOWEN BROTHERS.

468

*William H. Sleeper* and *Wayne J. Mullavey* (*Mr. Mullavey* orally), for the plaintiffs.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the defendant.

JOHNSTON, C. J. Just prior to the accident a car was being driven one to three lengths behind the defendant's truck. The wife of the driver was sitting beside him in the front seat. Subject to exception, she was allowed to testify that, when the very bright lights of an oncoming car struck him, her husband said: "My God, what is that"? and he also said that those lights blinded him. Immediately thereafter the truck struck the wagon. This question and assertion were admissible in evidence under the *res gestae* rule. *MacDonald* v. *Appleyard*, 94 N. H. 362, 368.

This principle of evidence was stated in *Bennett* v. *Bennett*, 92 N. H. 379, 386, as follows: "Spontaneous exclamations are admissible only when made so closely to the particular occurrence that we may assume that the declarant's mind is controlled thereby, so that the exclamation is involuntarily forced out of him by that event, without opportunity for reflection or determination as to what it might or might not be wise to say. There must be no fair opportunity for the will or choice of the speaker to mould his words or for reflection to form opinion, and the hearsay declaration may be admitted only if it has the mark of such spontaneity." Whether or not there was such spontaneity was for the Trial Court to determine in its discretion. *Bullard* v. *McCarthy*, 89 N. H. 158, 161.

When one of the plaintiffs' witnesses was on the stand, she was cross-examined by the defendant regarding a written statement that she had given defendant's counsel. This statement was confirmed in writing by a daughter as follows: "I have read the above statement of my mother, Mrs. Mary Clark, and it is true to the best of my knowledge. Read and approved. L. G. Harding." Subject to exception, this statement of the daughter's was admitted in evidence. The defendant sought to justify the admission by saying that it was explanatory of the mother's statement that that was what the daughter had said. This testimony of the mother was: "But my daughter again was the one that spoke about the flares. I didn't see them."

The defendant had the right to impeach the witness's testimony by means of the statement given out of court. It had the right to dispute her assertion that she did not see the flares. These rights did not however justify placing in evidence a statement of the daughter who was not a witness that she corroborated the written statement of the mother. The ruling was erroneous.

The written statement itself was excluded from evidence when offered by the defendant and the jury did not see it. The Court plainly charged the jury that the extrajudicial statements used in the case were not evidence of the truth of any of the statements made as follows: "Now, there have been introduced in this case certain so-called extrajudicial statements, that is, statements made by people outside of court. Now these are not to be used by you as evidence of the truth of any of the statements made, unless they are made by the parties to the case in the nature of admissions, in which case, if against the interest of the party, then they may be used by you as proof of the truth of the statements made, or the facts stated." "It is then held that the error is cured in the absence of a finding by the court that the jury were in fact influenced by the incompetent and prejudicial evidence. The presumption is that they obeyed the instructions." *Fuller* v. *Railroad*, 78 N. H. 366, 370. In the present case, the Court found no prejudice in denying a motion of the plaintiffs' that the verdicts be set aside for various reasons including one "that the jury acted through prejudice." Accordingly it is held that the error of admitting the statement of the daughter was cured. It could have had no effect other than as an assertion of facts and this the Court instructed the jury it could not have.

The Court denied a motion for a new trial based upon newly discovered evidence because it was unable to find that it was probable that a different result would be reached at a new trial. Such a finding

must be made before a new trial can be granted on the ground of newly discovered evidence. *McGinley* v. *Railroad*, 79 N. H. 320; *Watkins* v. *Railroad*, 80 N. H. 468; *State* v. *Long*, 90 N. H. 103. These cases also hold that the question is for the Trial Court to determine whether this requirement has been met. The newly discovered evidence corroborated various facts relied upon by the defendant, that the truck's lights were on, that the light of an oncoming car was high and blinding, that the truck did not change its course or its speed indicating that the driver did not see the wagon and the flares were immediately put out. The plaintiffs attach significance to the evidence because it consists of testimony by a passenger in the truck that he was able, in spite of the blinding effect of approaching lights, to see the plaintiffs' wagon when it was approximately two hundred feet ahead of the truck. However, since there was evidence at the trial that the passenger in the car following the truck was able to see some object in the road "quite a little ways up ahead," the jury had before it evidence upon which it could have found the truck driver negligent in failing to see the wagon, and the newly discovered evidence would not be essentially different in this regard. Moreover, the weight of the newly discovered evidence would necessarily be affected by wholly inconsistent statements made by the witness to the state trooper immediately after the accident. For these reasons and in view of the evidence concerning the absence of a lantern on the wagon and the time of the evening, it cannot be said that the Judge abused his discretion. This exception is overruled.

Finally, the plaintiffs excepted to the Court's exclusion of the issue of the defendant's negligence based upon the failure of the driver to use the leather visor in the cab. The evidence concerning the purpose of this visor was as follows: "If I may explain the visor I would like to at this time. The visor is used for the purpose and glare of sun and it is to take the rays of the sun coming down from an upward position and the lights of an oncoming vehicle come up from the road and a visor would do you no good. It would be inclined to do you more harm than good. It would cut off your clear vision." There was no evidence that use of the visor to avoid the blinding lights would have been more helpful than harmful.

*Judgment on the verdicts.*

All concurred.