Hillsborough
No. 7725

## THE STATE OF NEW HAMPSHIRE

### v.

## JOHN E. KENNA

April 15, 1977

*David H. Souter,* attorney general, and *Peter W. Heed* (*Mr. Heed* orally), for the state.

*Hanrahan & Flynn* and *William E. Brennan,* of Manchester (*Mr. John P. Flynn, Jr.* orally), for the defendant.

KENISON, C.J.   At approximately 11:55 p.m. on November 17, 1975, Joseph Miller was shot at close range in the abdomen with a high powered rifle. Between the time of the shooting and the time he underwent surgery about an hour later, the victim told several people that the defendant, John E. Kenna, had shot him. Mr. Miller never regained consciousness after surgery and died about twenty-four hours later.

The state's evidence against the defendant consists primarily of the testimony of the people to whom the victim spoke between the time of the shooting and his death. At the defendant's trial for first degree murder, the defendant moved to suppress this evidence as hearsay. The state argued that the statements were admissible under either the spontaneous utterance or dying declaration exceptions to the hearsay rule. After a lengthy hearing, the Trial Court (*Loughlin,* J.) denied the motion holding that the statements were both spontaneous utterances and dying declarations. The court then reopened the hearing to allow the state to offer evidence that Mr. Miller was dead, a fact to which the court

and the state thought the defendant's counsel had agreed. The defendant's objection to the reopening was noted.

At the conclusion of the trial and after the case was submitted, the jury was unable to reach a verdict, causing the court to declare a mistrial. Thereafter, the defendant moved to dismiss the indictment and to poll the jury. Both motions were denied. All exceptions were reserved and transferred to this court.

The first issue is whether the court erred in admitting the challenged testimony. We will first consider whether victim's statements come within the spontaneous utterance exception to the hearsay rule. The theory that underlies this exception is that "the circumstances under which the utterance was made afford a guarantee of truth in substitution for that provided by oath and cross-examination. To provide this substitute guarantee it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event, and before he had time to contrive or misrepresent." *Semprini v. Railroad*, 87 N.H. 279, 280, 179 A. 349, 350 (1935).

■ There can be little doubt that the shooting in this case satisfies the startling event requirement. C. McCormick, Law of Evidence § 297, at 705 (2d ed. 1972). Our inquiry is only whether the judge's conclusion that the statements were sufficiently spontaneous is sustainable. *See Stanley v. Bowen Bros.*, 96 N.H. 467, 79 A.2d 1 (1951). In *State v. Peters*, 90 N.H. 438, 10 A.2d 242 (1939), the wife of the declarant-victim ran downstairs immediately after she heard gunshots. Her wounded husband, lying outside the door of their store, made certain statements to her that incriminated the defendant. We sustained the trial court's ruling that the declarant's statements were admissible as spontaneous utterances.

■ The facts in this case are remarkably similar to those in *Peters* with respect to the statements the victim, Mr. Miller, made to his daughter, Rosalie. She testified that she was awakened by the sound of gunfire, ran downstairs and found her father on the doorstep of their home moaning and calling her name. When she bent down to examine his wounds, he whispered in a clear voice, "Get the cops. Get the ambulance. Johnny just shot me. Johnny just shot me." Rosalie testified that he made these statements

within two or three minutes after the shooting. Under the authority of *Peters,* we hold the trial court's admission of this evidence was proper.

■  After Mr. Miller said "Johnny just shot me" the second time, Rosalie testified that she said "John Kenna?" and her father replied "Yes." The defendant objects to the introduction of the victim's answer. The fact that an inculpating utterance is made in response to a question does not necessarily bar its admission as an excited utterance. Annot., *Admissibility, as Part of Res Gestae, of Accusatory Utterances Made by Homicide Victim After Act,* 4 A.L.R.3d 149, 203 (1965); *see, e.g., State v. Martineau,* 114 N.H. 552, 324 A.2d 718 (1974). The defendant argues, however, that Rosalie's inquiry "John Kenna?" amounts to a leading question the answer to which should not be admitted. We have found a few Texas cases that have taken the position that, in the absence of instinctiveness or spontaneity, responses to leading questions are not admissible as excited utterances. *E.g., Autry v. State,* 143 Tex. Crim. 252, 157 S.W.2d 924 (1941); *Faulkner v. State,* 43 Tex. Crim. 311, 65 S.W. 1093 (1901). However, even if we characterized Rosalie's inquiry as a leading question, the victim's response is admissible because it was made instinctively and spontaneously and not as part of a long narration of events. Annot., *supra; see People v. Costa,* 40 Cal. 2d 160, 252 P.2d 1 (1953).

The reliability of Mr. Miller's answer is substantially enhanced by statements he made to Officers Rodier and Boehm. Officer Rodier arrived at the scene approximately twenty minutes after the shooting. He testified that Mr. Miller's shirt was saturated with blood and that other bodily fluids covered the ground in an area two feet in diameter. After examining the wounds and administering first aid, Officer Rodier asked Mr. Miller what had happened. He said that John Kenna had shot him. During the next fifteen to twenty minutes, Mr. Miller repeated this statement six to nine times. He also expressed over a dozen times the fear that John would go to his mother's house and shoot her too. John's mother, Mrs. Kenna, was apparently Mr. Miller's girl friend. The officers testified that throughout this time, the victim was very excited and did not become quiet until he was told that the Nashua police had dispatched cruisers to Mrs. Kenna's house to protect her. Officer Boehm, who came over at Officer Rodier's request, heard the victim make several of these statements.

Subsequently, Mr. Miller told William Clark, the ambulance driver; Rachel Towle, a hospital employee; and Dr. John Patterson, who attended Mr. Miller in the emergency room, that his "girlfriend's son" or "John Kenna" had shot him. The doctor testified that at the time of the victim's statements to him—about one hour after the shooting—Mr. Miller was coherent but excited. Quickly thereafter the patient was anesthetized for surgery.

■■ We hold that the trial court properly admitted the testimony of the policemen and medical personnel. Although contemporaniety is a factor, it is by no means controlling. *State v. Martineau*, 114 N.H. at 556, 324 A.2d at 721. The gravity of Mr. Miller's wounds, his excited state of mind, the relatively short period of time within which he made these statements and the internal consistency of his story give rise to sufficient guarantees of truthfulness to warrant admission into evidence. 2 Wharton, Criminal Evidence § 298 (13th ed. C. Torcia ed. 1972); *see Annot., supra* at 183–85 & 1975 Supp. at 10. Even if the less contemporaneous identifications of the assailant were held not to be spontaneous utterances, their admission would not be prejudicial error because such identifications were merely cumulative of the earlier statements which are admissible. *Phifer v. State*, 64 Wis. 2d 24, 218 N.W.2d 354 (1974).

Given our ruling, we need not discuss whether the victim's statements were also admissible as dying declarations. Consideration of the trial court's reopening of the suppression hearing to admit evidence of Mr. Miller's death, a fact that must be established under the dying declaration rule, C. McCormick, Evidence 681 (2d ed. 1972), is therefore also unnecessary.

■■ The next issue is whether the court's refusal to poll the jury was error. Although most jurisdictions require the jury to be polled at the timely request of one of the parties, American Bar Association, Standards Relating to Trial by Jury § 5.5 and Commentary (Approved Draft, 1968); *see* Fed. R. Crim. P. 31 (d), the law in this state has always been that the trial judge may poll the jury in his discretion if justice so requires. *State v. Sturtevant*, 96 N.H. 99, 70 A.2d 909 (1950); *State v. Grierson*, 96 N.H. 36, 69 A.2d 851 (1949); *Curtis v. Car Works*, 74 N.H. 600, 67 A. 220 (1907). The discretion of the trial judge is broad, and his denial of a motion to poll will not be overruled except for abuse of discretion. *Bothwick v. LaBelle*, 115 N.H. 279, 339 A.2d 29 (1975).

He may poll the jurors when he believes that they may have made a mistake or may have been guilty of some improper conduct which taints the verdict. *Caldwell v. Yeatman,* 91 N.H. 150, 15 A.2d 252 (1940). This is not a case in which the defendant seeks to expose some mistake or misconduct that resulted in an adverse verdict. *Masterson v. Lacroix,* 112 N.H. 416, 297 A.2d 658 (1972). The defendant desires a tally of the jury vote merely for the purpose of providing him with "insight and guidelines in evaluating [his] position on retrial." Where the defendant seeks a polling for this reason, the trial court's refusal to poll is clearly not an abuse of discretion.

Finally, we find no merit in the defendant's claim that the indictment should have been dismissed on the ground that the state's failure to video tape or depose the victim before he underwent surgery denied the defendant due process.

*Defendant's exceptions overruled.*

BOIS, J., did not sit; the others concurred.