EL PUEBLO DE PUERTO RICO, apelado, *v.* PEDRO M. GARCÍA REYES, acusado y apelante.

*Número:* CR-82-2 *Resuelto:* 14 de febrero de 1983

*Luis F. Abreu Elías, Roberto De Jesús Cintrón* y *Josué F. Maldonado Casillas,* abogados del apelante; *Miguel Pagán, Procurador General Interino,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante fue convicto de violación. Se le imputó haber abusado de una joven sorda. En su recurso señala la comisión de varios errores en la admisibilidad de evidencia sobre: (1) prueba de identificación a pesar de las objeciones oportunas del acusado; (2) permitir a una persona actuar como intérprete durante el juicio sin estar debidamente calificada; (3) declaraciones de la víctima hechas bajo la influencia de su excitación, en respuesta a preguntas de su

madre; (4) prueba de un incidente ocurrido en el Centro Judicial; (5) prueba incongruente con las alegaciones; y (6) limitar indebidamente el contrainterrogatorio de la víctima.

A continuación la prueba de cargo:

Iris Elisa Ortiz Roche fue calificada como intérprete. Testificó que había sido intérprete de sordos y de ciegos, que daba educación especial a sordos, que había trabajado durante tres años para la Unidad de Rehabilitación Vocacional, que había tomado adiestramiento por dos años, que había interpretado a sordomudos para siquiatras y en discursos, y que había comparecido al tribunal anteriormente. Testificó, además, que había hablado con la testigo y que podía interpretar sus sonidos.

Al comenzar el testimonio de Rosa E. De Jesús Medina, joven sorda de 16 años que fue la víctima de la violación, la señora Ortiz Roche sirvió como intérprete. Luego, ante la admisión de ésta de que tenía problemas para interpretar lo que la niña declaraba, el tribunal la relevó de su función, y en su lugar autorizó a la madre de la testigo para que continuara como intérprete de su hija. En síntesis, la perjudicada expresó que el 30 de marzo de 1981, en horas tempranas de la tarde, el acusado, junto con otro individuo, la forzaron a montarse con ellos en un automóvil y la llevaron a un lugar apartado de Guaynabo. Allí la obligaron a tener relaciones sexuales y contra natura con ellos. Los dos hombres tomaban cerveza y fumaban marihuana. También la compelieron a tomar cerveza, forzando la lata contra sus labios. Utilizando una navaja, le cortaron la ropa que llevaba puesta y después de abusar de ella la golpearon y la dejaron tirada a un lado del camino.[1]

---

[1] El testimonio brindado por Rosa E. De Jesús Medina en el juicio contiene varias contradicciones. Por ejemplo, la testigo, respecto a la descripción del vehículo de sus agresores, declaró en diversos momentos que era "blanco" y "rosado", "azul", "rojo", "grande", "chiquito", etc. También contiene varias exageraciones (que el carro le había pasado por encima) y algunas instancias donde la testigo

Ruth Pagán de Gutiérrez testificó que el día de los hechos encontró a la niña tirada en la carretera. Fue a buscar ayuda para socorrerla y llevarla al hospital.

Por su parte, Regina Medina Concepción, madre de la niña, testificó que su hija conocía al acusado con anterioridad a los hechos. Éste le hacía proposiciones deshonestas. La niña se le quejaba diciendo "carro blanco por allí" y le indicaba con la mano sobre el sexo. Declaró que el día de los hechos, mientras estaba en el hospital, su hija se le acercó y le dijo "carro blanco". Ella le preguntó "¿Manny?" —sugiriéndole el nombre del acusado— y su hija le respondió que sí. Luego de presentada la denuncia la niña se entrevistó con la Policía, a través de ella. La Policía prometió hacerse cargo del caso. Posteriormente, la testigo fue con Rosa, otra hija y su yerno al lugar donde se encontraba el acusado. La testigo se acercó y entabló conversación con el acusado con el pretexto de que deseaba comprar su carro. Mientras tanto, la víctima lo identificó desde el vehículo en que se hallaba. Notificaron a la Policía y el acusado fue arrestado.

La mujer policía Rosita Quiles, quien estuvo a cargo de la investigación del caso, testificó que cuando fueron a la escena de los hechos la víctima se dobló a buscar algo y encontró una cuchilla pequeña, con la que alegó que le habían cortado la ropa. Testificó que cuando estaban some-

---

simplemente no pudo entender lo que se le preguntaba. En lo que sí fue preciso y consistente su testimonio fue en los detalles de la violación y en la identificación del acusado.

Esta disparidad se puede explicar debido a su condición de sorda. Es un hecho establecido que este impedimento genera problemas adicionales tanto sicológicos y emocionales como de comunicación. Así, debido al reducido potencial que frecuentemente tienen los sordos de realizar abstracciones, no es irrazonable que un testimonio refleje cierta desorientación respecto a algunos particulares, mientras que respecto a otros no. Véanse, D. Rose, *Audiological Assessment*, 2da ed., 1978, Cap. 4, págs. 101–145; H. Newby, *Audiology*, 3ra ed., 1972, Cap. 10, págs. 305–331; L. Edward Travis (ed.), *Handbook of Speech Pathology and Audiology*, 1971, Cap. 15, págs. 399–431.

Este hecho no resta a la credibilidad que la testigo pueda tener en aquellas partes de su testimonio en que demostró seguridad y precisión. *Cf. Quintana Tirado* v. *Longoria*, 112 D.P.R. 276 (1982).

tiendo los casos la niña se abalanzó sobre el acusado y tuvieron que quitársela de encima.

El Dr. Félix López Maldonado, médico que examinó a la víctima, testificó que ésta mostraba síntomas compatibles con una desfloración reciente.

La defensa del apelante se limitó a tratar de establecer una coartada. Para esto utilizó principalmente el testimonio de Gregorio López Nieves. Éste declaró en el juicio que el día de los hechos el acusado estuvo trabajando con él todo el tiempo en una construcción en el Municipio de Cataño. Testificó, además, que unos pocos días antes del juicio él iba en un carro con el acusado y la víctima los paró y les dijo, dirigiéndose al acusado, "yo no voy a ir a corte, tú no me hiciste nada". Les dijo, además, que era su mamá la que insistía en que ella fuera y que también le pegaba. Aclaró que él entendió todo lo que decía la niña y que ella hablaba con normalidad.

Como testigo de refutación el fiscal presentó a Pastora Cesáreo Guerrido, quien era la dueña de la construcción en que había trabajado el acusado. Testificó que jamás había visto a Gregorio López Nieves trabajando en la obra.

Esta fue, en resumen, la prueba desfilada durante el juicio. Como primer error se apunta que la identificación estuvo viciada por las acciones de la madre de la víctima, quien sugirió a ésta el nombre del acusado y la llevó a observarlo bajo circunstancias que garantizaban que la identificación sería positiva. El apelante sostiene que este curso de acción violó su garantía constitucional de no ser privado de su libertad sin el debido procedimiento. Invoca a *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969). No tiene razón.

Sin entrar a considerar si la identificación de un sospechoso por parte de una persona particular sin la intervención de ningún agente del orden público deba regirse por la doctrina de *Gómez Incera*, no creemos que las acciones de la madre tuvieron efecto en la identificación del

apelante. La perjudicada conocía al acusado con anterioridad a los hechos. Ante esta circunstancia son inaplicables las salvaguardas que requiere la Constitución para la confiabilidad y, por ende, validez de la identificación extrajudicial. *Pueblo* v. *Peterson Pietersz,* 107 D.P.R. 172 (1978); *Pueblo* v. *Montañez Ramos,* 100 D.P.R. 911 (1972). Véase, N. R. Sobel, *Eyewitness Identification,* 2da ed., New York, Clark Boardman Co., Ltd., 1981, pág. 1-8; Annot., *Admissibility of Evidence as to Extra-Judicial or Pretrial Identification of Accused,* 71 A.L.R.2d 449 (1960).

Como segundo error alega el apelante que Iris Elisa Ortiz Roche fue indebidamente calificada como intérprete. Basa su contención en que no se demostró fehacientemente que ésta poseyera un conocimiento especializado que la calificara como "perito" para ser un intérprete de sordos. El apelante se equivoca. Confunde los requisitos necesarios para ser un "intérprete judicial" con los de un "perito".

■ Para actuar como intérprete en un procedimiento judicial no es necesario que una persona sea calificada como perito. *Pueblo* v. *Flores,* 45 D.P.R. 435 (1933); *Pueblo* v. *Abréu Mojica,* 90 D.P.R. 760 (1964). La Regla 50 de las de Evidencia provee:

> Cuando por desconocimiento del idioma español o cualquier incapacidad por parte de un testigo se haga necesario el uso de un intérprete, éste cualificará como tal si el juez determina que él puede entender o interpretar las expresiones del testigo. El intérprete estará sujeto a juramento de que hará una interpretación y traducción fiel y exacta de lo declarado por el testigo.

En el presente caso el juez de instancia determinó a base de la experiencia y entrenamiento especializado de la intérprete que ésta podía entender o interpretar las expresiones de la testigo. No obstante, en determinado momento de la declaración admitió la intérprete que tenía dificultades para entenderla o interpretarla. Esto de por sí era suficiente para relevarla de continuar actuando. En efecto

así sucedió. Nada hay en el récord que sugiera, sin embargo, que la interpretación que hasta ese momento realizó no hubiera sido fiel y exacta. En estas circunstancias no estamos autorizados a intervenir con la decisión de instancia de proseguir los procedimientos utilizando como intérprete a la señora madre de la testigo. Después de todo, era la persona con quien la perjudicada había convivido por más de dieciséis años y a quien la comunicación diaria, producto de esa convivencia, debió habilitarla para entenderla e interpretarla. Ciertamente la madre estaba capacitada para servir de intérprete y, en efecto, así parece entenderlo también el apelante, pues no la impugnó. De lo que se queja es de la interpretación de la señora Ortiz Roche, pero, como hemos visto, ella fue relevada oportunamente. De todos modos, aunque así no fuera, el apelante venía obligado a demostrar el perjuicio que ello le ocasionó y no lo hizo.

Señala también el apelante que el tribunal de instancia erró al permitir que la madre de Rosa declarara que ésta le contestó que sí cuando le preguntó si su atacante había sido Manny. El apelante admite que este tipo de declaraciones es generalmente admisible bajo la excepción de la prueba de referencia contenida en la Regla 65(B) de las Reglas de Evidencia de 1979.(2) Sin embargo, argumenta que la declaración no puede considerarse espontánea si sobreviene como respuesta a una pregunta hecha por un tercero.

La mencionada excepción de las declaraciones espontáneas ha sido reconocida desde hace largo tiempo, aunque anteriormente se consideraba como una instancia

---

(2) "Regla 65. Excepciones a la regla de prueba de referencia aunque el declarante esté disponible como testigo

"Es admisible como excepción a la regla de prueba de referencia aunque el declarante esté disponible como testigo:

"(A) . . . . . . .

"(B) *Declaraciones espontáneas por excitación:* Una declaración hecha mientras el declarante estaba bajo la influencia de excitación causada por la percepción de un acto, evento o condición y la declaración se refiere a dicho acto, evento o condición."

de la más amplia, aunque poco definida, excepción de *res gestae*. En la práctica, ha sido acogida con mucha liberalidad por este Tribunal. Véanse, por ejemplo, *Pueblo v. Blanco*, 40 D.P.R. 130 (1929), y *Pueblo v. López*, 76 D.P.R. 378 (1954). Véase también la nota en 42 Rev. Jur. U.P.R. 135 (1973). En *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962), enumeramos los requisitos para su aplicación: "(1) un evento suficientemente alarmante que produzca una manifestación espontánea e irreflexiva; (2) falta de tiempo para inventar la manifestación; y (3) la manifestación debe referirse *al evento* que la causa."

 Ahora bien, el mero hecho de que la manifestación se hubiera hecho en respuesta a una pregunta no es suficiente para inferir que no se ha cumplido con el requisito de que la declaración sea espontánea. *Pueblo v. Dueño Maysonet*, 94 D.P.R. 706 (1967). Véanse además: *State v. Porter*, 274 S.E.2d 860 (1981); *People v. Bailey*, 415 N.E.2d 466 (1980); *State v. Barnes*, 606 P.2d 802 (1980); *Com. v. Hess*, 411 A.2d 830 (1979); *State v. Kenna*, 374 A.2d 427 (1977); Annot., *Fact that Rape Victim's Complaint or Statement Was Made in Response to Questions as Affecting Res Gestae Character*, 80 A.L.R.3d 369 (1977). Esta determinación sólo puede hacerse a base de un examen de la totalidad de las circunstancias en que surge la misma. *Pueblo v. Cortés del Castillo*, supra, págs. 229–230.

Así, pues, en situaciones parecidas hemos aceptado la declaración a pesar de que surgía como respuesta a preguntas de terceros, *Pueblo v. Dueño Maysonet*, supra; *Pueblo v. González*, 66 D.P.R. 202 (1946); *Pueblo v. Alicea Cruz*, 100 D.P.R. 295 (1971); *Pueblo v. Calventy*, 34 D.P.R. 390 (1925); *Pueblo v. Fuentes*, 63 D.P.R. 44 (1944); *Pueblo v. Díaz Martínez*, 87 D.P.R. 691 (1963), mientras que en otros casos la hemos aceptado, aun cuando de primera intención la víctima ha sido interrogada y ha negado que le hubiera ocurrido algo para luego confesar la verdad. *Pueblo v. De Jesús Cruz*, 94 D.P.R. 180 (1967); *Pueblo v. Lugo*, 70 D.P.R.

145 (1949). En *State* v. *Kenna,* supra, pág. 427, se admitió bajo esta excepción el testimonio de una hija de la víctima, quien declaró que ésta había contestado afirmativamente a su pregunta "¿John Kenna?" cuando ella lo encontró herido y éste le dijo "Johnny me acaba de disparar".

A la luz de lo anterior, entendemos que en la presente situación la conclusión del tribunal de instancia de que la declaración de la víctima fue espontánea está sostenida por la prueba. En efecto, fue la propia niña la que tomó la iniciativa de hablarle a su mamá del "carro blanco". Este dato, unido a sus quejas anteriores de las invitaciones del acusado, era suficiente para comunicar la identidad del agresor. La pregunta de su madre de si se trataba de Manny no contribuía nada sustancial a lo dicho, sino que meramente articulaba explícitamente algo que la niña, por su particular impedimento, tenía dificultad de expresar.

Como cuarto error alega el apelante que el tribunal incidió al permitir que se desfilara prueba sobre un incidente ocurrido en el Centro Judicial. Se trata del testimonio de la agente Quiles en el sentido de que la niña se abalanzó sobre el apelante y que tuvieron que quitársela de encima. ¿Era admisible la evidencia de esta conducta no verbalizada? Veamos.

Se debe notar que en el presente caso si la víctima en vez de agredir físicamente al apelante lo hubiera acusado verbalmente dicha "declaración" constituiría prueba de referencia a tenor con el inciso (A)(1) de la Regla 60 de las de Evidencia de 1979,(3) al ser presentada para probar

---

(3) Esta regla dispone:

"Regla 60. *Definiciones*

"Se adoptan las siguientes definiciones relativas a prueba de referencia:

"(A) *Declaración:* Una 'declaración' es (1) una aseveración oral o escrita; o (2) *conducta no verbalizada de la persona, si su intención es que se tome como una aseveración.*

"(B) *Declarante:* 'Declarante' es la persona que hace una declaración.

"(C) *Prueba de referencia:* 'Prueba de referencia' es una declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado." (Énfasis suplido.)

la identidad del violador. (4) Sin embargo, tratándose de conducta no verbalizada, ésta sólo se considera prueba de referencia si la intención de la persona que la realiza es que se tome como una aseveración, según el inciso (A)(2) de la regla.

El reconocimiento del problema de admisibilidad que esta situación presenta se remonta al caso de *Wright* v. *Tatham*, 112 Eng. Rep. 448, 7 AD. & E. 313, 386 (Exch. Ch. 1837) y 7 Eng. Rep. 559, 5 Cl. & F. 670, 739 (H.L. 1838). Se impugnó la validez de un testamento a base de la dudosa capacidad jurídica del testador, quien había muerto en el ínterin dejando una cuantiosa fortuna. Para establecer la sanidad mental del testador se intentó presentar en evidencia varias cartas dirigidas a él y escritas en términos compatibles con la creencia de que se estaba tratando con un hombre cabal. La Cámara de los Lores, luego de ocho años de litigio, decidió que las cartas no eran admisibles, ya que no había garantía de que el testador las hubiera leído, o aun de que las hubiera recibido, y en esas circunstancias ni siquiera el propio testimonio oral de los remitentes, quienes para la fecha del juicio también habían muerto, hubiera sido admisible. Véanse las reseñas del caso en C. T. Mc-Cormick, *Handbook of the Law of Evidence*, 2da ed., Sec. 250, págs. 597–598 (1972), y 2 *Wigmore on Evidence*, Sec. 267 (1940).

■ En tiempos recientes esta postura ha sido criticada. (5) Se reconoce que una declaración que constituye prueba de referencia debe tomarse con cautela, ya que este

---

(4) Lo cual no quiere decir que sería necesariamente inadmisible. En algunos casos podría admitirse bajo la mencionada excepción de declaración espontánea o bajo alguna otra de las excepciones que contemplan las Reglas de Evidencia.

(5) Véanse: Note, *An Exception to the Hearsay Rule*, 26 Harv. L. Rev. 146 (1912); E. M. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv. L. Rev. 177 (1948); J. F. Falknor, *The "Hear-Say" Rule as a "See-Do" Rule: Evidence of Conduct*, 33 Rocky Mt. L. Rev. 133 (1961); J. M. Maguire, *The Hearsay System: Around and Through the Thicket*, 14 Vand. L. Rev. 741 (1961).

tipo de evidencia presenta riesgos con respecto a las siguientes cuatro áreas: (1) *narración del evento* —debe presumirse que el lenguaje utilizado refleja fielmente la percepción del declarante; (2) *percepción del evento* —debe presumirse que el evento ha sido claramente percibido y correctamente interpretado; (3) *recuerdo del evento* —debe presumirse que la memoria del declarante es fiel a lo observado; y (4) *sinceridad del declarante* —debe presumirse que el declarante desea decir la verdad. T. Finman, *Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence*, 14 Stan. L. Rev. 682 (1962); véanse también, E. M. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv. L. Rev. 177 (1948); y L. H. Tribe, *Triangulating Hearsay*, 87 Harv. L. Rev. 957 (1974). La posibilidad de que el declarante, consciente o inconscientemente, falsifique alguna de estas suposiciones impone la obligación de considerar esta evidencia con cautela.

■ Sin embargo, se reconoce que algunos tipos de declaraciones extrajudiciales, y particularmente aquella conducta no verbalizada de la que se puede inferir una afirmación de alguna índole (*implied assertion*) están menos propensos a la falsificación y, por lo tanto, merecen mayor credibilidad. Así, por ejemplo, se señala que evidencia de que alguien abrió un paraguas, traída para probar que estaba lloviendo, o que alguien puso en marcha su vehículo y atravesó la intersección para probar que la luz del semáforo había cambiado, debe ser excluida de la clasificación de prueba de referencia. Se argumenta que estos casos, por su naturaleza, ofrecen mayores garantías, ya que se trata de actos que se realizan sin un propósito consciente de comunicación y como resultado de una percepción cercana en tiempo del evento motivador. Véanse J. F. Falknor, *The "Hear-Say" Rule as a "See-Do" Rule: Evidence of Conduct*, 33 Rocky Mt. L. Rev. 133 (1961); 4 Louisell y Mueller, *Federal Evidence*, Sec. 414 (1980).

■ Este enfoque tuvo acogida en las Reglas de Evidencia federales de 1975, R. 801(a)(1). Véanse, 28 U.S.C.A. *Federal Rules of Evidence*, pág. 527; y 11 *Moore's Federal Practice*, 2da ed., Secs. 801.01, 801.10 (1982), y nuestra Regla 60, *Práctica Procesal Puertorriqueña*, Vol. I, Análisis Editorial, págs. 195–196. El efecto del cambio fue eliminar del ámbito de la prueba de referencia la conducta no verbalizada constitutiva de una afirmación por implicación (*implied assertion*), a menos que se estableciera la intención específica del autor de realizar la afirmación. De no haber tal intención esta conducta es admisible como prueba circunstancial del evento. En *Práctica Procesal Puertorriqueña*, supra, a ese efecto se expone a la pág. 196: "Bajo esta regla 60 la conducta es declaración de referencia solo cuando es claramente aseverante, es decir, cuando se hace con la clara intención de hacer una aseveración. Tal es el caso cuando una persona, sin hablar, señala otra con el dedo para identificarle, queriendo decir 'ése es'. Cuando se trata de conducta de la cual puede inferirse una aseveración pero que no se hace con la intención de hacer tal aseveración, no estamos en el caso de una 'declaración' bajo esta regla, se trataría meramente de la admisibilidad de evidencia circunstancial a ser determinada bajo los principios de pertinencia."

Entendemos que el presente caso es un ejemplo de lo anterior. Resultaría muy difícil negar que la acción de la víctima fue espontánea e irreflexiva, precipitada por la fuerza de su rencor, más bien que por una malicia ponderada. Su conducta constituía una reacción natural que no conllevaba la intención de realizar afirmación alguna respecto al acusado. Por lo tanto, caía fuera de la definición de la Regla 60 y era admisible como prueba circunstancial de la identidad de su agresor.

Somos conscientes de que este tipo de evidencia se puede prestar para que testigos inescrupulosos adopten comportamientos fingidos con el propósito de influir indebida-

mente en los juzgadores, aprovechando la mayor liberalidad de la regla en cuanto a la conducta no verbalizada. Muchas veces el problema se complica por la inadvertencia de los abogados contrarios, quienes, al asociar la prueba de referencia con las manifestaciones verbales solamente, no reconocen las afirmaciones no verbalizadas como tal y sólo acuden al lenguaje general de la Regla 19 (6) para procurar su exclusión. Corresponde, entonces, a los jueces de instancia realizar un cauteloso balance en cada caso para determinar si el valor probatorio de la prueba que se pretende presentar excede la medida de su perjuicio tomando en cuenta los peligros particulares que conlleva este tipo de evidencia.

En el presente caso se cuestionaba la sinceridad del testimonio de la declarante. Indudablemente su acto espontáneo tenía un incalculable valor probatorio, que predominaba sobre el efecto perjudicial de su emotiva acción. Entendemos que por su particular impedimento ésta traducía su versión con mayor fidelidad que lo que ningún intérprete hubiera podido conseguir. No hubo error en su admisión.

Como quinto error alega el apelante que el tribunal de instancia se equivocó al admitir prueba sobre el delito de sodomía a pesar de que no se había acusado por este delito. No tiene razón.

▮ En otras ocasiones hemos decidido que evidencia de otros delitos cometidos por el acusado no es admisible en un proceso criminal, excepto cuando el delito anterior: (a) es un hecho pertinente para establecer la comisión del crimen

---

(6) Regla 19.

"Evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores:

"(a) Peligro de causar perjuicio indebido
"(b) probabilidad de confusión
"(c) desorientación del jurado
"(d) dilación de los procedimientos
"(e) innecesaria presentación de prueba acumulativa."

por el cual se le juzga; (b) forma parte del *res gestae;* (c) puede demostrar motivo, intención, premeditación, malicia o un designio común; o (d) forma parte del mismo evento delictivo. *Pueblo* v. *Martínez Lucena,* 92 D.P.R. 881 (1965); *Pueblo* v. *Hernández Santiago,* 97 D.P.R. 522 (1969); *Pueblo* v. *Reyes Lara,* 100 D.P.R. 676 (1972). Véase la Regla 20(B) de las de Evidencia. En la presente situación, la prueba ofrecida claramente estaba comprendida dentro de esta excepción. Era admisible.

Finalmente, alega el apelante que el tribunal de instancia limitó indebidamente el contrainterrogatorio de la víctima al no permitir que se le preguntara sobre si su abuela acostumbraba pegarle. Su argumento no nos convence.

■ Como norma general no se revocará una sentencia por motivo de la errónea exclusión de alguna evidencia, a no ser que se demuestre que tal exclusión fue un factor sustancial en la decisión del juzgador. Regla 5 de Evidencia; *Pueblo* v. *Lebrón González,* 113 D.P.R. 81 (1982). El apelante no nos ha persuadido de que el hecho de que no se le permitiera contrainterrogar sobre ese extremo a la testigo tuviera un efecto sustancial sobre la decisión. De hecho, tal línea parecía impertinente por completo.[7] Tampoco se cometió este error.

*Se confirmará la sentencia apelada.*

---

[7] En el juicio, el apelante trató de probar que el testimonio de la niña estaba influenciado por su madre, pero nada trató de implicar respecto a su abuela ni se intentó traer evidencia de otros actos de ésta que la pudieran haber influenciado.