*743 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Elias Robinson mediante petición de certiorari. Solicita que revoquemos una orden de protección dictada en su contra el 16 de abril de 2002, al amparo de la Ley Contra el Acecho, Ley Núm. 284 de 21 de agosto de 1999, 33 L.P.R.A. see. 4013 y ss. La referida orden se dictó por el Tribunal de Primera Instancia, Sala de Fajardo (Hon. Alicia Velázquez Piñol, Juez). Dicha orden enmendó a su vez la orden de protección dictada por ese foro el 10 de diciembre de 2001. Por los fundamentos que expondremos a continuación, se expide el auto solicitado y se revoca la orden recurrida.
I
El 8 de noviembre de 2001, Laura Climent García presentó ante el Tribunal de Primera Instancia, Sala de Fajardo, una petición de orden de protección contra el aquí peticionario, Elias Robinson. En síntesis, Climent García alegó que Robinson la persigue constantemente en la patrulla de la policía, cosa que le causa “temor” por la seguridad de ella y sus hijos. Petición de Orden de Protección, Ap. Apel., pág. 43.
El 15 de noviembre de 2001, el tribunal expidió una citación contra el aquí peticionario, Robinson, quien labora como Teniente de la Policía de Puerto Rico. Se le citó para comparecer al tribunal el 27 de noviembre de 2001, para que prestara su declaración sobre los hechos alegados en la petición de orden de protección radicada por la aquí recurrida, Climent García. Ap. Apel., pág. 47.
Conforme la exposición narrativa de la prueba que consta en autos, el Tribunal de Primera Instancia celebró dos vistas relacionadas a este caso. Como parte de los procedimientos se presentaron tres testigos, es decir, la propia Climent García, Idermis Ojeda (esposa del peticionario Robinson) y Yanitza Concepción Rivera.
El 10 de diciembre de 2001, el Tribunal de Primera Instancia expidió una “Orden de Protección sobre Ley de Acecho” contra el aquí peticionario Robinson. La orden se dictó para'tener vigencia hasta el 10 de diciembre de 2002. Se le ordenó al peticionario Robinson abstenerse de molestar, acosar, perseguir y amenazar a la aquí recurrida, Climent García. También se le ordeñó a abstenerse de penetrar o acercarse al hogar de Climent García y sus alrededores, su lugar de trabajo y alrededores, el hogar de su familia y alrededores, y la escuela donde ésta estudia y sus alrededores.
Inconforme con la orden dictada, Robinson compareció ante este Tribunal mediante petición de certiorari radicada el 4 de enero de 2002. En dicho recurso alegó que el Tribunal de Primera Instancia había cometido cuatro errores al dictar la orden recurrida. El 28 de febrero de 2002, este foro dictó Sentencia en la que expidió *744 el recurso solicitado y devolvió el caso al Tribunal de Primera Instancia para que hiciera determinaciones de hechos conforme a la prueba desfilada.
El 16 de abril de 2002, el foro de primera instancia expidió una “Orden de Protección sobre Ley Contra el Acecho-Enmendada”. El tribunal expuso, según lo ordenado, las determinaciones de hechos a las que llegó luego de escuchar a las partes y a sus testigos y luego de estudiar toda la prueba.
Es de esta orden enmendada que Robinson comparece nuevamente ante este Tribunal mediante petición de certiorari. En primer lugar, alega que el foro de primera instancia erró al no permitirle ejecutar a su abogado una defensa adecuada. Los otros dos errores señalados van dirigidos a impugnar la admisión de prueba de referencia alegadamente inadmisible y de prueba cubierta por el privilegio entre cónyuges. Alega que de no haberse admitido esa prueba, el tribunal hubiese llegado a un resultado distinto.
El 30 de mayo de 2002, dictamos una Resolución en la que ordenamos al peticionario Robinson presentar una exposición estipulada de la prueba o, en su defecto, un proyecto de exposición narrativa. El 18 de julio de 2002, el aquí peticionario radicó un proyecto de exposición narrativa, según lo ordenado. El 14 de agosto de 2002, dictamos una nueva Resolución en la que ordenamos a la recurrida, Climent García, informamos si estipulaba el contenido de la exposición narrativa. De no estipularlo, le ordenamos presentar sus objeciones detalladas y específicas al proyecto de exposición narrativa presentado por el peticionario Robinson. De lo contrario, le advertimos que se daría por aprobada la exposición narrativa, a falta de objeciones.
Ante la incomparecencia de la recurrida Climent García, dictamos Resolución el 16 de septiembre de 2002 en la que aprobamos, sin objeción, la exposición narrativa de la prueba. También le ordenamos a la recurrida Climent García que presentara su alegato no más tarde de los treinta (30) días siguientes a la notificación de la Resolución. La recurrida, Climent García, tampoco compareció
Vencido el plazo sin que compareciera la recurrida Climent García, y luego de estudiados los hechos y el derecho aplicable, resolvemos.
II
En la Exposición de Motivos de La Ley Contra el Acecho, supra, se expresó que ésta tiene como objetivo tipificar como delito y penalizar todo patrón de conducta de acecho, que induzca temor en el ánimo de una persona prudente y razonable de sufrir algún daño físico en su persona, sus bienes o en la persona de un miembro de su familia, y proveer los mecanismos adecuados para intervenir oportunamente en los casos de acecho, ofreciendo protección a las víctimas de este tipo de comportamiento.
El Artículo 3(a) de la referida legislación, supra, sec. 4013(a), define la conducta constitutiva de acecho de la siguiente manera:

“una conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona; se realizan amenazas escritas, verbales o implícitas a determinada persona; se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia. ”

Cualquier persona que entienda que haya sido víctima de acecho podrá presentar por sí o por conducto de su representación legal o un agente del orden público, una petición en el tribunal solicitando una orden de protección, sin que sea necesaria la presentación previa de una denuncia o acusación. Artículo 5 de la Ley Contra el Acecho, supra, sec. 4015. A esos efectos, no será necesario que las personas protegidas por la ley presenten casos criminales para poder solicitar una orden de protección. Artículo 13, id. see. 4023.
*745 La Ley Contra el Acecho dispone que las acciones civiles incoadas a su amparo se tramitarán al amparo de las Reglas de Procedimiento Civil y las acciones de carácter criminal se tramitarán bajo las reglas procesales aplicables a ese tipo de procedimiento. Artículo 14, id., see. 4024. No obstante lo anterior, toda violación a sabiendas, de una orden de protección, constituirá delito menos grave. Artículo 10, id., see. 4020.
Cónsono con lo anterior, es menester señalar que las Reglas de Evidencia serán de aplicación en todas las salas del Tribunal General de Justicia de Puerto Rico en procedimientos de naturaleza civil o criminal. Regla 1 de Evidencia, 32 L.P.R.A. Ap. IV, R.l. El fin último de dichas reglas es el descubrimiento de la verdad en todos los procedimientos judiciales. Regla 2 de Evidencia, id.
Aclarado lo anterior, atenderemos los señalamientos de error presentados por el aquí peticionario, Robinson.
Ill
El peticionario Robinson alega que erró el Tribunal de Primera Instancia al admitir prueba de referencia y usar la misma como base para expedir la orden de protección de la cual se recurre.
La prueba de referencia consiste en recibir como evidencia una declaración que se hizo fuera de la vista o juicio en el que se ofrece, precisamente, para probar que tal declaración es verdadera. En la medida en que el declarante (persona cuya declaración constituye la prueba de referencia) no está testificando en esa vista, el valor probatorio de la prueba de referencia depende de la credibilidad que puede merecer una persona que no está sujeta a confrontación por la parte perjudicada por su declaración. Véanse Regla 60 de Evidencia, 32 L.P. R.A. Ap. IV, R. 60; Ernesto L. Chiesa, Tratado de Derecho Probatorio; Reglas de Evidencia de Puerto Rico y Federales, Publicaciones J.T.S., 2000, Tomo II, a las págs. 615-616.
Se reconoce que una declaración que constituye prueba de referencia debe tomarse con cautela, ya que ese tipo de evidencia presenta riesgos con respecto a las siguientes cuatro áreas: narración, percepción, recuerdo del evento y sinceridad del declarante. Pueblo v. García Reyes, 113 D.P.R. 843, 852-853 (1983).
Como regla general, la prueba de referencia no es admisible, salvo en los casos que la ley y las reglas lo autorizan por excepción en las Reglas 64 y 65 de Evidencia, supra. Por ejemplo, la Regla 64, id., establece la admisibilidad de prueba de referencia cuando el testigo no está disponible. Se entiende que un testigo no está disponible cuando: 1) está exento o impedido de declarar por razón de un privilegio reconocido en la misma regla en relación al asunto u objeto de su declaración; 2) insiste en no declarar a pesar de una orden del tribunal para que declare; 3) testifica no recordar; 4) ha fallecido o está imposibilitado de comparecer a declarar por razón de enfermedad o impedimento mental o físico; o 5) está ausente de la vista y el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal.
Por su parte, las Reglas de Evidencia también establecen las circunstancias específicas en las que será admisible prueba de referencia, aunque el testigo esté disponible. Algunas de esas excepciones están relacionadas con declaraciones contemporáneas a la percepción; declaraciones espontáneas por excitación; condición física o mental; diagnóstico o tratamiento médico; escritos de pasada memoria y otras excepciones específicamente detalladas en la Regla 65 de Evidencia, supra.
Con esto en mente, consideremos los testimonios vertidos en corte y pasemos juicio sobre su admisibilidad. Según se desprende de la exposición narrativa estipulada de la prueba, el tribunal comenzó a ventilar el caso con el testimonio de la aquí recurrida, Climent García. A preguntas del tribunal, esta testigo declaró que el acecho alegado consistía en que “'ella sabía que el teniente la acechaba porque 'él era el policía del pueblo", que 'pasaba muy a menudo por la casa en la que ella vivía con el biombo prendido y que ella (Climent) temía por su vida porque el Teniente había tenido muchos problemas en Culebra". Climent añadió que sabía que el *746 teniente pasaba por su casa a menudo porque sus hijos juegan en la marquesina y le habían dicho que habían visto pasar al Teniente”. E.N.P., a la pág. 2; énfasis suplido.
Esa declaración fue objetada por la representación legal de Robinson bajo el fundamento de que ésta constituía prueba de referencia. Empero, el tribunal declaró sin lugar la objeción. Id.
Climent García también declaró durante la vista que “entiende que el Teniente (Robinson) la 'acechó' porque mientras hablaba con la esposa del teniente Robinson, ésta le dijo que el Teniente la estaba mirando”. E.N.P., a la pág. 2; énfasis suplido. Nuevamente se objetó el testimonio por constituir prueba de referencia. E.N. P., a la pág. 2. Sin embargo, el tribunal, bajo el fundamento de que el proceso era uno dirigido a la “búsqueda de la verdad’, expresó que había que permitir todo el testimonio de Climent García. E.N.P., a la pág. 2.
Posteriormente, Climent García declaró que “ia cuñada del teniente (Robinson), de nombre Yanitza Concepción Rivera, le había dicho que el Teniente le había dicho a ella (refiriéndose a Yanitza Concepción) que la quería matar (rejiriéndose a Climent García)”. E.N.P., a la pág. 3; énfasis suplido. Agregó que “la esposa del teniente (Robinson) y la nuera de éste le habían dicho que el teniente había expresado que le arrancaría la cabeza (a Climent García)". E.N.P., a la pág. 3; énfasis suplido.
La representación legal del aquí peticionario Robinson objetó el testimonio por entender que se trataba de prueba de referencia. La objeción se declaró sin lugar por el tribunal, nuevamente bajo el fundamento de que “lo importante del proceso es encontrar la verdad’. E.N.P., a la pág. 3.
Durante el segundo día de vista, se trajo a testificar a Yanitza Concepción Rivera. El tribunal le preguntó a la testigo si el aquí peticionario, Robinson, le había dicho que quería matar a Climent García. Concepción Rivera declaró que vivía con Robinson y que ‘‘nunca le había oído decir tal cosa”. E.N.P., a la pág. 4; énfasis suplido. También negó que le hubiera dicho eso a Climent García. E.N.P., a la pág. 4; énfasis suplido.
A la luz de lo anterior, concluimos que el tribunal no debió permitir las declaraciones de Climent García basadas en prueba de referencia. Las tres veces que la representación legal de Robinson objetó, Climent García estaba testificando a base de alegadas declaraciones hechas por terceras personas fuera del tribunal y sin la oportunidad de ser contrainterrogadas al respecto. Obviamente se hizo referencia de esas alegadas declaraciones fuera del tribunal, para probar la “certeza” de lo que Climent García estaba alegando en su petición de orden de protección.
En una ocasión, Climent García se refirió a información que sus hijos alegadamente le proveyeron (de que Robinson pasaba a menudo por la casa), y en las otras ocasiones declaró a base de lo que alegadamente le dijeron Yanitza Concepción Rivera e Idermis Ojeda, esposa del demandado-peticionario Robinson (de que Robinson les había dicho a ellas que quería matar a Climent García). Esas declaraciones permitidas por el tribunal constituyen la típica prueba de referencia inadmisible. Aparte de que esas declaraciones tienen un mínimo grado de confiabilidad, no se alegó ninguna de las estrictas y específicas razones por las que, por excepción, se podría admitir prueba de referencia.
Como expusimos anteriormente, la Regla 2 de Evidencia, supra, establece que ese cuerpo legal tiene como único propósito la búsqueda de la verdad. Es por eso que nos resulta cuestionable que el tribunal haya decidido no aplicar las reglas porque precisamente estaba en un proceso “para buscar la verdad’. Ello resulta en el contrasentido de descartar las reglas evidenciarías diseñadas para buscar la verdad, basándose en que hay que buscar la verdad. No podemos avalar esa teoría, típica quizás de los pasos de comedia de "La Tremenda Corte", pero no de nuestro Tribunal General de Justicia.
*747 IV
Como es bien sabido, no toda admisión errónea de evidencia amerita la revocación. El criterio que debe utilizarse en casos “ordinarios" de errores en la admisión de evidencia es si de no haberse admitido erróneamente la prueba en controversia “probablemente el resultado hubiera sido distinto Pueblo v. Mangual Hernández, 111 D.P.R. 136, 145 (1981). Esto es, sí la evidencia erróneamente admitida puede haber tenido una influencia notable, determinante, y hasta desmedida, en la mente del juzgador de los hechos en relación con el veredicto, fallo o sentencia que se emitiera en el caso, sea éste civil o criminal. Pueblo v. Amparo Concepción, 146 D.P.R. 467 (1998).
Es por esa razón que debemos considerar las determinaciones de hechos a las que llegó el tribunal y que le sirvieron de base para expedir la orden de protección recurrida. Las determinaciones de hechos son las siguientes:

“Que el peticionado tiene muchísima animosidad en contra de la Peticionaria. Que escudándose bajo el cargo de funcionario del orden público, acechó a la peticionaria, ubicándose en un vehículo oficial, frente a la residencia y lugar de trabajo en repetidas ocasiones. Que el peticionado, en discusiones con su esposa Sra. Idermis Ojeda, se ha expresado en forma despectiva y grosera al referirse a la querellante. Que se observó al querellado en ambos días de vista dirigiendo mirada amenazante a la peticionaria. ”

El peticionado ha presentado conducta acechante repetitiva, en contra de doña Laura Climent García.
[Orden recurrida, pág. 1; Ap. Apel., pág. 2, énfasis suplido.]
Aparte del testimonio de la aquí recurrida Climent García, basado en lo que sus hijos supuestamente le dijeron, no se desprende del expediente de autos ninguna otra prueba que sustente la determinación de hechos en el sentido de que Robinson “acechó” a Climent García “ubicándose en su vehículo oficial frente a la residencia”. Id. Por otro lado, está la determinación de hechos de que Robinson “acechaba” a Climent García en su trabajo. De la exposición narrativa estipulada de la prueba sólo se desprende que Climent García labora en el área del muelle del Municipio de Culebra y que el aquí peticionario, Robinson, es policía del pueblo. No vemos en la referida exposición ninguna prueba que sustente la alegada existencia de un acecho conforme lo define la ley que tipifica dicha conducta, más aún cuando es de conocimiento general que Culebra es un municipio pequeño y no hay nada raro en que un policía transite por el muelle. De hecho, el aquí peticionario, Robinson, expone en su petición de certiorari que “estar en el muelle" es parte de sus funciones, por lo que “estar allí, o pasar por allí, sin más, no puede ser acecho". Petición de certiorari, a la pág. 15. Climent García no contradice que Robinson tiene que estar o pasar por el referido muelle como parte de sus funciones, por lo que estamos de acuerdo en que ese sólo hecho no constituye acecho.
Es de vital importancia señalar además que el tribunal tuvo ante sí el testimonio de la testigo Yanitsa Concepción, persona a la cual hizo referencia Climent García durante su testimonio. Según el testimonio de Climent García, Concepción Rivera “le había dicho que el Teniente le había dicho a ella (refiriéndose a Concepción Rivera) que la quería matar (refiriéndose a Climent García)”. E.N.P., a la pág. 3. Como vimos, Concepción Rivera negó categóricamente esa declaración durante su testimonio en corte. E.N.P., a la pág. 4. No obstante lo anterior, y a juzgar por el lenguaje utilizado en sus determinaciones de hechos, el tribunal le dio mucho peso al testimonio vertido por Climent García a pesar de que la testigo en corte negó abiertamente haber declarado fuera de corte lo alegado por Climent García. En otras palabras, el tribunal le dio credibilidad a una prueba de referencia inadmisible sobre el testimonio directo de una testigo.
Forzoso es concluir entonces que la evidencia erróneamente admitida fue determinante para llevar al tribunal a expedir la orden de protección recurrida. Si no hubiese sido admitida, es altamente probable que el resultado habría sido distinto. Por lo tanto, el error señalado sí fue cometido.
*748 y
El peticionario Robinson también señala que erró el Tribunal de Primera Instancia al basar su determinación en prueba cubierta por el privilegio entre cónyuges.
El privilegio de la relación conyugal incluye dos vertientes diferentes, es decir, uno se refiere a las comunicaciones confidenciales entre los cónyuges y la otra se refiere al privilegio de no declarar contra el cónyuge. Ernesto L. Chiesa, supra, Tomo I, a la pág. 256.
El privilegio de comunicaciones confidenciales impide a cualquiera de los cónyuges -testigo o parte-declarar sobre las comunicaciones sostenidas durante el matrimonio. Cualquiera de los cónyuges, ya sea testigo o parte, puede invocar el privilegio por derecho propio, aun después de terminado o disuelto el matrimonio, ya que dichas comunicaciones gozan de una garantía de confidencialidad. Pueblo v. De Jesús Delgado, Opinión de 20 de diciembre de 2001, 2002 J.T.S. 5. El privilegio contemplado es el de negarse a divulgar o impedir que otro divulgue, durante o después del matrimonio, una comunicación confidencial entre cónyuges. Ernesto L. Chiesa, supra, a la pág. 260.
Sin embargo, los sucesos percibidos por el cónyuge-testigo no tienen garantía alguna de privacidad o intimidad. En esos casos, se entiende que la mejor norma y práctica es dejar al cónyuge-testigo la decisión de testificar o no. En otras palabras, el cónyuge-testigo es el único poseedor del privilegio. Pueblo v. de Jesús Delgado, supra, a la pág. 590. Al amparo de la Regla 33 de Evidencia, supra, para que se entienda renunciada esta modalidad del privilegio, la persona debe ser advertida o informada por las autoridades pertinentes, de su derecho al privilegio y de la existencia del mismo. Id., a la pág. 592.
La Regla 27 de Evidencia, supra, no es de carácter absoluto, ya que en su sección (D) establece las siguientes siete excepciones al privilegio de las comunicaciones conyugales:

“(D) No existe el privilegio bajo esta regla si:

(1) Se trata de una acción civil de un cónyuge contra el otro.

(2) Se trata de un procedimiento criminal en el cual un cónyuge es acusado de:

(i) un delito cometido contra la persona o la propiedad de otro cónyuge o de un hijo cualquiera de los dos.

(ii) un delito cometido contra la persona o la propiedad de un tercero mientras cometía un delito contra la persona o la propiedad del otro cónyuge.

(iii) Bigamia o adulterio.

(iv) Abandono de menores o incumplimiento de obligación alimenticia en relación a un hijo de cualquiera de los dos cónyuges.

(3) Se trata de un procedimiento judicial bajo la Ley de Menores o de una acción sobre custodia de menores.

(4) Se trata de un procedimiento criminal y la comunicación se ofrece en evidencia por un acusado que es uno de los cónyuges entre los cuales se hizo la comunicación.

(5) Se trata de un pleito incoado por o a nombre de cualquiera de los cónyuges con el propósito de establecer su capacidad.

*749
(6) Se trata de un procedimiento para recluir a cualquiera de los cónyuges o de otra forma ponerlo a él o a su propiedad, o ambos, bajo el control de otro por motivo de su alegada condición mental o física.

(7) La comunicación fue hecha, total o parcialmente, con el propósito de hacer posible o ayudar a cualquier persona a cometer o planear la comisión de un delito, acto torticero o fraude. ”

Como se desprende de las determinaciones de hechos, el tribunal encontró “probado” que Robinson, durante discusiones con su esposa, “se ha expresado en forma despectiva y grosera” sobre Climent García.
De la exposición narrativa de la prueba, se desprende que la señora Ojeda, esposa del aquí peticionario, Robinson, fue llevada como testigo durante la segunda vista realizada en el caso. Ésta declaró que “todo había comenzado con una pelea entre muchachos porque el hijo de Climent le había propinado al hijo de ésta y el peticionario (Robinson) una paliza en la escuela”. E.N.P., a la pág. 3. Acto seguido, el tribunal le preguntó a la testigo si Robinson le había dicho que quería matar a la peticionada”. E.N.P., a la pág. 4. La testigo no contestó y se encogió de brazos. E.N.P., a la pág. 4. A pesar de que la representación legal de Robinson levantó una objeción bajo el fundamento del privilegio entre cónyuges, el tribunal la declaró sin lugar, bajo el fundamento de que estaban allí para “descubrir la verdad’. E.N.P., a la pág. 4.
En un momento posterior, el tribunal le hizo otra pregunta a la testigo en la que se auscultó si Robinson le había dicho a ella ciertas cosas. La representación legal objetó nuevamente bajo el mismo fundamento, pero el tribunal denegó la objeción. E.N.P., a la pág. 4.
A raíz de estas incidencias, el tribunal decidió expedir la orden de protección solicitada, ya que “no le habían gustado los gestos de Robinson, le bastaba con los gestos de la señora Ojeda y había percibido animosidad entre las partes". E.N.P., a la pág. 4.
No hay duda de que el tribunal erró al declarar sin lugar las objeciones presentadas por la defensa y en las que se invocó el privilegio entre cónyuges. Las contestaciones solicitadas por el tribunal requerían de la testigo que declarara sobre comunicaciones sostenidas durante su matrimonio, las cuales tienen una garantía de confidencialidad. Ese tipo de declaración está expresamente prohibida por las reglas de evidencia aplicables y no vemos que se haya invocado ninguna de las limitadas y específicas excepciones a dicha regla.
Es también claramente errónea la actuación del tribunal de llegar a determinaciones de hechos por los gestos de la testigo. No vemos cómo sustituir un testimonio verbal -el cual no tenía que brindarse en virtud del privilegio antes indicado-, por los simples gestos de la testigo, los cuales carecen de valor probatorio y su interpretación es de carácter enteramente subjetivo. En otras palabras, desconocemos la procedencia de la determinación en la que el tribunal concluye que el aquí peticionario, Robinson, durante conversaciones con su esposa “se ha expresado en forma despectiva y grosera al referirse a la querellante (Climent García)”. Más que interpretar, ello constituye poner palabras en la boca de la testigo.
Reiteramos que la apreciación de la prueba corresponde en primer lugar al foro de primera instancia. Por esa razón, los tribunales apelativos sólo intervendremos con esa apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Maisonave, 129 D.P.R 49 (1991). Es decir, sólo intervendremos con la apreciación efectuada por ese foro cuando se den los elementos antes mencionados o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble. Pueblo v. Irizarry, Opinión de 10 de mayo de 2002, 2002 J.T.S. 68.
Como expusimos anteriormente, en este caso erró el Tribunal de Primera Instancia al admitir prueba inadmisible y al basar en ellas sus determinaciones de hechos. Por otro lado, es importante indicar que del expediente de autos y de los testimonios vertidos en corte, no encontramos pmeba que sustente la determinación *750 de hechos de que el aquí peticionario, Robinson, incurrió en “conducta acechante repetitiva”. La determinación de que el tribunal había “percibido animosidad’ entre las partes y de que Robinson miró mal a Climent García durante la vista, sin más, no es prueba concluyente o demostrativa de un patrón de conducta constitutivo de acecho.
Es evidente que el tribunal cometió error manifiesto al descartar las reglas de evidencia en la apreciación de la prueba, y que exhibió pasión, prejuicio y parcialidad en contra del demandado-peticionario, Elias Robinson. Así pues, al aplicar el estándar de revisión aplicable, resolvemos que la orden de protección recurrida es manifiestamente errónea, por lo que procede su revocación.
VI
Por los fundamentos antes expuestos, expedimos el auto de certiorari y revocamos la orden de protección sobre acecho dictada por el Tribunal de Primera Instancia contra el demandado-peticionario, Elias Robinson.
Adelántese por teléfono y fax, y notifíquese de inmediato.
Así lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General