ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BRENDA LEE RIVERA RULLÁN<br><br>Querellante-Recurrida<br><br>v.<br><br>FIRST MEDICAL HEALTH PLAN, INC.<br><br>Querellado- Peticionario | KLCE202400023 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sala: 505<br><br>Sobre: Ley Núm. 2 de 17 de octubre de 1961 (Procedimiento Sumario), Ley Núm. 80 de 30 de mayo de 1976 (Despido Injustificado) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece la parte peticionaria, First Medical Health Plan, Inc., (en adelante, "First Medical"), para solicitarnos que se revise y revoque la *Resolución* emitida y notificada el 28 de diciembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual declaró *No Ha Lugar* a la *Moción de Sentencia Sumaria.*

Por los fundamentos que exponemos a continuación, *expedimos* el recurso de *Certiorari, modificamos* el dictamen recurrido y, así modificado, *confirmamos.*

**I**

El 1 de junio de 2022, la señora Rivera Rullán (en adelante, (señora Rivera Rullán" o "recurrida") presentó una *Querella* bajo el procedimiento sumario de la Ley Núm. 2 de octubre de 1961, también conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 et seq. (en adelante, "Ley Núm. 2-

Número Identificador

SEN2024 _____

1961"), en contra de First Medical al palio de la Ley Núm. 80 de 30 de mayo de 1976 también conocida como Ley Sobre Despidos Injustificados, según enmendada, 29 LPRA sec. 185a et seq. (en adelante,"Ley Núm. 80-1976"), por despido injustificado. En esencia, la señora Rivera Rullán alegó que First Medical realizó una investigación mediante un abogado externo, el Lcdo. Jorge Pizarro García (en adelante, "Lcdo. Pizarro"), al amparo de una queja presentada por una empleada y como resultado del proceso investigativo promovido por la peticionaria, la señora Rivera Rullán fue despedida el 20 de mayo de 2022 por razones injustificadas.

El 13 de junio de 2022, First Medical presentó su *Contestación a Querella* en donde negó las alegaciones y afirmó que el despido fue por justa causa. En apretada síntesis, First Medical alegó que la señora Rivera Rullán provocó muchas quejas en su contra, no fue receptiva a los señalamientos, negó la oferta de cambio de puesto donde no tendría personal que supervisar y mantendría su salario y condiciones, que su desempeño fue pobre y constitutiva de hostigamiento y acoso laboral, por lo que First Medical tenía justa causa para despedir a la señora Rivera Rullán.

Acaecidos varios trámites procesales, el 6 marzo de 2023, First Medical presentó una *Moción Solicitando Sentencia Sumaria*. En apretada síntesis, arguyó que, **basado en los hallazgos de la investigación realizada por el Lcdo. Pizarro, la señora Rivera Rullán fue despedida con justa causa por haber empleado una conducta de hostigamiento y acoso laboral. Añadió que se debería desestimar la *Querella* mediante sentencia sumaria por no existir controversia de hechos ni existir una reclamación que justifiquen la concesión de un remedio en ley.**[1] En ausencia de respuesta de parte o del foro de instancia, el 11 de abril de 2023,

---

[1] Apéndice 3 del Recurso de *Certiorari*, págs. 17-40.

First Medical presentó una *Moción Reiterando Solicitud de Desestimación Sumaria y para que los Hechos Incontrovertidos Consignados se Tengan por Admitidos.*[2]

Concedidas algunas prórrogas y ocurridos varios incidentes procesales, el 8 de junio de 2023, la señora Rivera Rullán presentó su *Oposición de la Querellante a la Moción de Sentencia Sumaria Radicada por la Querellada.*[3] En esencia, la recurrida esgrimió que el despido fue injustificado en violación de la Ley Núm. 80-1976, y que el despido fue causado por la investigación y el informe realizado por el Lcdo. Pizarro, que a su vez constituye prueba de referencia inadmisible, y que todos los hechos materiales y esenciales estaban en controversia.

El 28 de diciembre de 2023, notificada el mismo día, el Tribunal de Primera Instancia emitió una *Resolución* declarando *No Ha Lugar* a la *Solicitud de Sentencia Sumaria.*[4] El foro *a quo* determinó que la prueba principal presentada por First Medical en su moción, siendo esta el informe realizado por el Lcdo. Pizarro, era prueba de referencia inadmisible para probar los hechos y que dicha investigación no dio garantías mínimas de un debido proceso de ley.

En adición, concluyó que la doctrina federal citada por First Medical sobre la deferencia a las investigaciones de patrono no es aplicable a Puerto Rico y que el patrono tiene el peso de la prueba en cuanto a si el despido fue mediante justa causa. En vista de lo anterior, el foro primario razonó que First Medical no había probado que el despido hubiera sido justificado al no haber presentado prueba admisible en evidencia, ni haber demostrado que la querellante pudo haber rebatido la prueba en su contra. Por último, indicó que la querellante logró establecer que existía controversia

---

[2] Apéndice 4 del Recurso de *Certiorari,* págs. 541-542.
[3] Apéndice 9 del Recurso de *Certiorari,* págs. 560-800.
[4] Apéndice 12 del Recurso de *Certiorari,* págs. 824-838.

sobre el motivo del despido y si en efecto se cometió realmente el alegado acoso laboral.

Inconforme con el dictamen del Tribunal de Primera Instancia, el 8 de enero de 2024, la parte peticionaria presentó el auto de *Certiorari* ante nos, donde imputó los siguientes señalamientos de error:

I. Erró el TPI al resolver que el informe de investigación de First Medical es prueba de referencia inadmisible.

II. Erró el TPI y abusó de su discreción al no dar [sic] brindar deferencia a la investigación interna ni a la adjudicación de credibilidad realizada por First Medical, a pesar de que el proceso de investigación no fue impugnado de forma alguna por la Recurrid[a] ni existe evidencia de perjuicio, irrazonabilidad o arbitrariedad en el proceso que justifique inmiscuirse con la prerrogativa gerencial en este caso.

III. Erró el TPI al resolver que no aplica a Puerto Rico la doctrina jurisprudencial federal del Primer Circuito sobre deferencia a las investigaciones internas.

IV. Erró el TPI al resolver que la Recurrida tiene derecho constitucional a un debido proceso de ley durante la investigación interna realizada por First Medical y que está en controversia si se le garantizó el mínimo de dicho derecho.

V. Erró el TPI al resolver que en el presente caso es First Medical quien tiene el peso de la prueba para establecer que el despido fue justificado.

Examinado el recurso en su totalidad y con la comparecencia ambas partes, procedemos a establecer el derecho aplicable y resolver.

**II**

***-A-***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG*

*Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR, supra*, pág. 338. Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B,

R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra; Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009). Es por ello que los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Id.* Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en

circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Cruz Flores et al. v. Hosp. Rydedr et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

### -B-

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. International Shipping Agency, Inc.,* 208 DPR 964, 979 (2022). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1. La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Id.* pág. 473

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, **ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley**. *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617

(1990). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

(1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.

*Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.*, 136 DPR 881, 912-

913 (1994). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Id.*, pág. 913. Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.
>
> *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 982.

Por último, el Tribunal Supremo de Puerto Rico ha reiterado que **"[t]oda vez que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario"**. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615,637 (2009); *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001).

-**C**-

Las Reglas de Evidencia de 2009 regulan la forma y el proceso sobre la admisibilidad de la prueba ante los tribunales. 32 LPRA Ap. VI. Específicamente, la Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c), define la prueba de referencia como "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Como norma general y salvo varias excepciones, "**la prueba de referencia no es admisible ya que la parte que se ve afectada por la declaración no tiene la oportunidad de confrontarse con el declarante**". 32 LPRA Ap. VI, R. 804; *Pueblo v. Zeno Torres*, 211 DPR 1, 17 (2022). La falta de confrontación conlleva que la prueba de referencia carezca de confiabilidad y sea de dudoso valor probatorio. Ernesto L. Chiesa Aponte, *Tratado de Derecho Probatorio, Reglas de*

*Evidencia de Puerto Rico y Federales*, pág. 616, Tomo II, Publicaciones JTS, (1998).

Nuestro Tribunal Supremo ha resuelto que una declaración que constituye prueba de referencia debe tomarse con cautela, ya que este tipo de evidencia presenta riesgos con respecto a la narración del evento, percepción del evento, recuerdo del evento y sinceridad del declarante. *Pueblo v. García Reyes*, 113 DPR 843, 853-854 (1983). Además, la posibilidad de que el declarante, consciente o inconscientemente, falsifique alguna de estas suposiciones impone la obligación de considerar dicha prueba con cautela. *Id.*, pág. 854

La Regla 805 de Evidencia esboza una **serie de excepciones a la regla de prueba de referencia,** aunque la persona declarante no esté disponible como testigo. 32 LPRA Ap. VI, R. 805. Particularmente, la Regla 805(F) de Evidencia establece los récords de actividades que se realizan con regularidad como una de las excepciones a la prueba de referencia. 32 LPRA Ap. VI, R. 805(F). La referida regla dispone lo siguiente:

> **(F)** *Récords de actividades que se realizan con regularidad:* Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término negocio, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

El texto de la Regla 805(F) de Evidencia, *supra*, contempla cuatro requisitos para su admisión, estos siendo: **1) que se hayan preparado en o cerca del momento en que éstos surgieron; 2) por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta; 3) si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad; y 4) si la preparación en sí de dicho escrito, informe, récord, memorando o compilación de datos se hizo como una práctica regular de dicha actividad de negocio.** No obstante, aun cuando se cumplan los requisitos el Tribunal podrá excluir la evidencia cuando **"la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad"** bajo la Regla 109(A) de Evidencia, 32 LPRA Ap. VI, R. 109 (A) o bajo uno de los factores bajo la Regla 403 de Evidencia, 32 LPRA Ap. VI, R. 403, según aplique. ERNESTO L. CHIESA APONTE, *Reglas de Evidencia de Puerto Rico 2009 Análisis por el Prof. Ernesto L. Chiesa* (L. Abraham, ed.), San Juan, Publicaciones JTS, 2009, pág. 262.

La parte promovente que proponga someter un récord como evidencia bajo el referido inciso de la Regla 805 (F) de las de Evidencia, *supra*, debe presentar el testimonio de su custodio o de alguna otra persona testigo cualificada, o una certificación que cumpla con las disposiciones de la Regla 902(K) de Evidencia, 32 Ap. VI, R. 902 (k), o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. La Regla 902(K) de Evidencia, *supra*, dispone lo siguiente:

> **(K)** *Récords certificados de actividades que se realizan con regularidad*
>
> El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, **el cual sería admisible conforme a la Regla 805(F), si se acompaña de una declaración jurada de la**

**persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:**

**(1) se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;**

**(2) se llevó a cabo en el curso de la actividad realizada con regularidad, y**

**(3) se preparó como una práctica regular de dicha actividad.**

**La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias**. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.

De ordinario, **las declaraciones extrajudiciales escritas que se introducen como prueba de la verdad de su contenido constituyen prueba de referencia inadmisible**. *H.R. Stationery, Inc. v. ELA*, 119 DPR 129, 136 (1987). (Énfasis suplido). **No obstante, los fundamentos para la excepción de la Regla 805(F),** *supra*, **descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del documento.** *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 985 (2010), citando a ERNESTO L. CHIESA APONTE, *Reglas de Evidencia de Puerto Rico 2009 Análisis por el Prof. Ernesto L. Chiesa, op. cit.*, pág. 263. (Énfasis suplido).

Sin embargo, los tribunales deben emplear un **análisis sobre la confiabilidad** del récord presentado, tomando en consideración los siguientes criterios: **1) si la información recopilada es importante para el negocio en cuestión fuera del contexto litigioso en el que se ofrece; 2) si el récord contiene información fáctica relativamente simple y no evaluaciones o conclusiones; 3) si la persona que transmite la información y la persona que practica el asiento (que pueden ser personas distintas) son independientes de las partes en el pleito; 4) si la información**

**está corroborada por evidencia independiente; 5) si el registro se prepara por una persona con experiencia y; 6) si se verificó la exactitud del mismo**. *H.R. Stationery, Inc. v. ELA, supra*, pág. 142. (Énfasis suplido).

**Cabe destacar que <u>los récords de negocio preparados para fines de litigación o potencial pleito no son admisibles</u>**. *Meléndez-Díaz v. Massachusetts*, 557 US 305, 321 (2009); *Palmer v. Hoffman*, 318 US 109, 113-114 (1943); R. Emanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. SITUM, 2015, págs. 510 y 513. No obstante, si el récord sirve para fines genuinos de negocio, en adición a la actual litigación, y se satisfacen rigurosamente los requisitos de la Regla 805(F) de Evidencia, *supra*, podrá ser prueba de referencia admisible. ERNESTO L. CHIESA APONTE, *Reglas de Evidencia de Puerto Rico 2009 Análisis por el Prof. Ernesto L. Chiesa, op. cit.*

Añade el profesor Chiesa que, bajo esta regla, "se exige que la entrada o asiento se haga en el curso de una actividad de negocios realizada con regularidad". *Muñiz Noriega v. Muñoz Bonet, supra*, pág. 986, citando a ERNESTO L. CHIESA APONTE, *Reglas de Evidencia de Puerto Rico 2009 Análisis por el Prof. Ernesto L. Chiesa, op. cit. pág.* 961. Es decir, "si la información se origina por una declaración de una persona que no tenía el deber de suplir la información ni entrarla en un récord del negocio, la evidencia no es admisible". ERNESTO L. CHIESA APONTE, COMPENDIO DE EVIDENCIA (EN EL SISTEMA ADVERSARIAL), 435, (2021).

### -D-

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq., también conocida como la Ley Sobre Despidos Injustificados, (en adelante, Ley Núm. 80-1976), cumple el fin de proteger a los empleados de actuaciones arbitrarias del patrono al disponer de remedios económicos que desalienten los

despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 770 (2022); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015). Según establecido por el Tribunal Supremo de Puerto Rico, esta legislación tiene dos propósitos principales: 1) desalentar la práctica de despedir a empleados sin que medie justa causa; y 2) proveer a los empleados remedios consustanciales a los daños causados por los despidos injustificados. *González Méndez v. Acción Social et al.*, 196 DPR 213, 229-230 (2016).

El estatuto dispone que todo empleado contratado sin tiempo determinado que trabaja para un patrono mediante remuneración y que fuere despedido sin que haya mediado una justa causa tendrá derecho a recibir de su patrono una indemnización, comúnmente conocida como "la mesada". Este resarcimiento constituye un remedio exclusivo disponible para aquellos empleados que fueron despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido. Artículo 1 de la Ley Sobre Despidos Injustificados, Ley Núm. 80 -1976, 29 LPRA 185a; *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 771.Cabe destacar que nuestro ordenamiento laboral no prohíbe el despido de un empleado, ya que un empleado puede ser despedido mediante justa causa, pero cuando no exista justa causa, se configurará la repercusión de que el patrono deberá asumir el pago de la mesada a favor del empleado. *Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*; pág. 771 *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 983.

*-E-*

En reclamaciones por despidos injustificados al amparo de la Ley Núm. 80-1976, **existía** un esquema estatutario que establecía una presunción de que todo despido es injustificado y le imponía al patrono el deber de demostrar, mediante preponderancia de la

prueba, que hubo justa causa para el mismo. *Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág. 774; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 906-907 (2011). En otras palabras, el antiguo texto de la Ley Núm. 80-1976, ya enmendado, invertía el orden de la prueba en estos casos y le imponía al patrono el deber de probar *in limine* que el despido fue justificado, a manera de excepción de la norma general de que la obligación de probar sus alegaciones para prevalecer en un pleito recae en el reclamante. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*; *Romero v. Cabrer Roig*, 191 DPR 643, 652 (2014).

Aun así, para disfrutar de dicha presunción estatutaria, el demandante tenía la obligación de aportar prueba que establezca los hechos básicos que den lugar a la presunción, estos siendo: (1) que fue empleado de un comercio, industria u otro negocio; (2) mediante contrato por tiempo indeterminado; (3) que recibía remuneración por su trabajo; y (4) que fue despedido de su puesto. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág. 775.Una vez activada la presunción, el patrono tenía el deber de presentar prueba para rebatir la presunción, probando que el despido fue justificado, y así persuadir al juzgador mediante preponderancia de la prueba. *Id.*; *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 911.

Ahora bien, este esquema probatorio cambió con las enmiendas de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017, 29 LPRA sec. 121 *et seq.*, también conocida como la Ley de Transformación y Flexibilidad Laboral (en adelante, "Ley Núm. 4-2017"), cuya vigencia comenzó el 26 de enero de 2017 y tuvo el efecto de enmendar múltiples leyes laborales. **En lo pertinente, el artículo 4.12 de dicho estatuto eliminó la frase del artículo 11 de la Ley Núm. 80-1976 que imponía el peso de la prueba al**

**patrono**. *Id.* La eliminación de la presunción generó un efecto prospectivo, según elaboramos más adelante.

La Ley Núm. 4-2017 introdujo una serie de enmiendas a la legislación laboral con el propósito de establecer normas más claras para la interpretación de los derechos y obligaciones que surgen de los contratos laborales y promover certeza en las relaciones entre patronos y empleados. Exposición de Motivos de la Ley Núm. 4-2017, *supra.*

El artículo 3 del derogado Código Civil de 1930, vigente al momento de la aprobación de la Ley Núm. 4-2017, recogía el principio de irretroactividad y disponía que "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario" y que "[e]n ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior". Aunque la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico 2020, derogó el precitado artículo, la misma proveyó su equivalente mediante su artículo 9 que dispone lo siguiente: "[l]a ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley no puede perjudicar los derechos adquiridos al amparo de una ley anterior". 31 LPRA sec. 5223.

Esencialmente, ambos cuerpos normativos reconocen que el efecto retroactivo de una ley no podrá perjudicar los derechos adquiridos al amparo de una ley anterior. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 777. De este mismo modo, la Ley Núm. 4-2017 incorpora el principio de irretroactividad mediante su artículo 1.2, que indica que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en los Artículos de

ésta", así cimentando su efecto prospectivo. Artículo 2 de la Ley Núm. 4-2017, *supra*, 29 LPRA sec. 121a.

Cabe destacar que sólo podrá tener efectos retroactivos cuando surja, de forma expresa o tácita, de la intención legislativa el deseo del legislador brindarle tal efecto. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra,* pág. 777; *Rivera Padilla et al. v. OAT*, 189 DPR 315, 340 (2013). La intención del legislador debe "aparecer claramente, pues, es por excepción que un estatuto se aplica retroactivamente". *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 777. En su ausencia, **la ley aplicable será la que estaba vigente al momento en que ocurrieron los hechos que dieron lugar a la causa de acción**. *Id.*

### III

Si una parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *Meléndez González v. M. Cuebas*, *supra*, pág. 111. Ahora bien, el solo hecho de no presentar evidencia que controvierta la solicitud presentada, no implica necesariamente que procede automáticamente la sentencia sumaria. Lo medular en este tipo de controversia es vislumbrar si existen hechos materiales en controversia que impidan la solución sumaria del caso, una vez examinada la totalidad del expediente.

Luego de evaluados los planteamientos propuestos bajo la solicitud de sentencia sumaria, y entendiendo que provienen de un informe, que es inadmisible por no cumplir con las excepciones señaladas bajo la prueba de referencia antes precitada, justipreciamos que no procede dictar una sentencia sumaria a favor de la parte peticionaria.

Así las cosas, y luego de un examen mesurado del expediente, procedemos a acoger como nuestros los siguientes Hechos Incontrovertidos dentro del contexto de la *Resolución* emitida por el Foro Recurrido como parte de esta Sentencia:

## HECHOS INCONTROVERTIDOS

1. La señora Rivera Rullán fue contratada en First Medical, el 3 de mayo de 1999, como Supervisora de Servicio.

2. La señora Rivera Rullán no tuvo situaciones con sus supervisores en First Medical, sino que su relación con ellos fue profesional.

3. Además del recibo de este Manual,[5] la señora Rivera Rullán reconoce que durante su relación de empleo con First Medical participó de talleres, sobre Técnicas de Supervisión.

4. La señora Rivera Rullán también reconoce haber recibido el Protocolo de Acoso Laboral de First Medical, el 2 de agosto de 2021.

5. Durante su empleo, la señora Rivera Rullán recibió un Acuerdo de Confidencialidad y No Divulgación de Información, con el cual tenía que cumplir.

6. Bajo el Acuerdo de Confidencialidad, la información a la que la señora Rivera Rullán tuvo acceso durante la relación de empleo con First Medical no era de su propiedad, sino de la empresa.

7. Como parte de sus funciones como Supervisora de Servicios, la señora Rivera Rullán era la persona encargada de velar por el funcionamiento de la oficina asignada. También, era la persona que tenía que llamarle la atención a los empleados, luego de consultado, en caso de que un empleado incumpliera con algunas normas o con el Manual de Empleados de First Medical.

8. Más allá de tener que cumplir personalmente con el Manual de Empleados y con el Reglamento Disciplinario de First Medical, la señora Rivera Rullán, como supervisora de la compañía, era la encargada de velar porque los empleados a su cargo cumplieran con las normas del negocio, incluyendo: asistencia y puntualidad, trato respetuoso y cordial, no gritar ni hacer alusión a condiciones médicas de los empleados, ni maltratar.

9. Como directora de servicios, la señora Rivera Rullán supervisaba a la Señora Mariangie García (señora García), Señora Carmen Hernández, Señora Ada Santana, Señora María Añeses, Señora Ileana Muñiz, Señora Wanda Cotto, Señora Ileana López, Señora Mariela Meléndez, entre otras.

10. La señora Rivera Rullán trabajó previamente con la señora García, y ambas ocupaban posiciones similares de Supervisoras de Servicios de Región; ambas eran pares. Sin embargo, el 12 de julio del 2021, la señora Rivera Rullán fue

---

[5] Se hace referencia al "Manual de Empleados" que fue entregado a la señora Rivera Rullán Rullán cuando comenzó labores en First Medical Hospital.

ascendida y promovida a la posición de Directora de Servicios y se convirtió desde el 12 de julio del 2021 hasta la fecha de despido de Rivera, en supervisora de García.

11. La señora Rivera Rullán fue orientada sobre la Política y Protocolo de Acoso Laboral de First Medical.

12. Como parte de los procesos en el caso, la señora Rivera Rullán tuvo la oportunidad de leer cuáles fueron esas versiones de sus empleadas, en torno a su comportamiento como supervisora.

El Tribunal de Primera Instancia determinó como **Hechos en Controversia** los siguientes:

1. Si tuvo que realizarse una segunda investigación sobre la conducta de la señora Rivera Rullán quien fue despedida, ya que en la primera investigación llevada a cabo por el Sr. César Ramírez (señor Ramírez) y el personal de recursos humanos de First Medical, la señora Rivera Rullán no incurrió en ninguna conducta que ameritara acción disciplinaria en su contra.

2. Si la señora García durante la investigación realizada le informó al señor Ramírez que no tenía nada en contra de la señora Rivera Rullán, y que la señora Rivera Rullán siempre la había apoyado como supervisora, por lo que los investigadores de la querellada no tomaron ninguna acción disciplinaria en contra de la querellante.

3. Si la señora Rivera Rullán acosó o tomó represalias en contra de la señora Rosado, aproximadamente diez años antes de ser despedida.

4. Si la señora Rivera Rullán acosó a las empleadas que fueron entrevistadas por el licenciado Pizarro.

5. Si First Medical realizó una investigación correcta, dándole oportunidad a la querellante a presentar prueba a su favor y defenderse de las acusaciones en su contra.

6. Si la señora Rivera Rullán fue despedida justificadamente.

Coincidimos con el Tribunal de Primera Instancia sobre la existencia de los **Hechos en Controversia** que ocupan la presente reclamación. Dicho esto, es preciso puntualizar que existen controversias de hechos materiales y esenciales que van dirigidas a la médula del caso que impiden que el caso sea resuelto sumariamente. Colegimos que existe controversia de hechos en cuanto si la segunda investigación era necesaria luego de haberse

realizado una investigación interna con resultado positivo por el señor César Ramírez del Departamento de Recursos Humanos.

De la misma forma, concurrimos con el foro primario en que existe controversia de hechos en cuanto a si la señora García no tenía problemas con su supervisora, no había razón para tomar acciones disciplinarias en contra de la señora Rivera Rullán. Como un Hecho en Controversia, podemos razonar que las entrevistas por parte del Lcdo. Pizarro fueron dirigidas a adjudicar algún tipo de responsabilidad sobre la señora Rivera Rullán y si esta investigación se realizó de manera correcta. Por último, sobre el Hecho en Controversia número seis (6) donde el Foro a *quo* determinó si el despido fue justificado o no, determinamos que es una controversia de derecho, que compete al Tribunal de Primera Instancia evaluar mediante la prueba admisible que en su día sea desfilada.

A continuación, procedemos a discutir los cinco errores presentados por la peticionaria, en el mismo orden. En apretada síntesis como primer error, la peticionaria señaló que el foro *a quo* incidió al resolver que el informe de investigación realizado por el bufete Pizarro & González para First Medical era prueba de referencia inadmisible. *No le asiste la razón.*

A raíz de una queja de acoso y hostigamiento laboral presentada por la Señora García Sánchez en contra de la recurrida,[6] First Medical realizó una investigación mediante abogado externo, el Lcdo. Pizarro, quién rindió un informe al respecto. El informe contiene anotaciones y resúmenes de las cinco (5) entrevistas que realizó el Lcdo. Pizarro como parte de su investigación, junto a sus conclusiones y recomendaciones.[7] A base de este informe, First Medical admitió que despidió a la recurrida, la señora Rivera Rullán.

---

[6] Según los escritos y documentos sometidos en evidencia, constamos que la Señora María de los Ángeles García Sánchez es comúnmente referida como "Mariangie".
[7] Apéndice 3, anejo 16 del Recurso de *Certiorari*, págs. 531-537.

**No existe controversia entre las partes sobre que el informe de investigación en cuestión constituye prueba de referencia.**[8] Más bien, la controversia ante nos, gira en torno a si el informe constituye una excepción a la norma general de inadmisibilidad.[9] A estos efectos, la peticionaria planteó que el informe constituye una excepción por tratarse de un récord de negocio al palio de la Regla 805(f) y la 902 (k) de Evidencia, *supra*. La peticionaria, en ánimo de convencer al tribunal, afirma que el informe cumple con los requisitos de la Regla 805 (f) porque se preparó en o cerca del momento en que ocurrieron los sucesos y/o actividades mencionadas en cada uno de ellos por una persona que tiene conocimientos de dichos asuntos y porque el informe es copia fiel y exacta de los documentos que forman parte del expediente personal de la señora Rivera Rullán, según fue autenticado mediante declaración jurada por la señora Lissa Medina Rivera, persona custodia de Expedientes de Personal el 1 de marzo de 2023 en San Juan, Puerto Rico.

Según discutimos previamente, la excepción de récord de negocio bajo la Regla 805(f) de Evidencia, *supra*, tiene cuatro (4) requisitos a cumplir para su admisión, éstos siendo: 1) que se haya preparado en o cerca del momento en que éstos surgieron; 2) por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta; 3) si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad; y 4) si la preparación en sí de dicho escrito, informe, récord, memorando o compilación de datos se hizo como una práctica regular de dicha actividad de negocio. Es necesario el cumplimiento de estos requisitos para cualificar como la excepción de récord de negocio y ser admisible. Además, aun cuando se cumplan dichos

---

[8] Apéndice 3, anejo 16 del Recurso de *Certiorari*, pág. 531-537.
[9] Apéndice 3, anejo 17 del Recurso de *Certiorari*, pág. 538-539.

requisitos, el documento puede ser excluido como evidencia bajo la Regla 109(A) de Evidencia, *supra*, cuando la fuente de información, el método o circunstancias de su preparación inspiren falta de confiabilidad. Por añadidura, **el propuesto récord de negocio no puede ser preparado para fines de litigación o potencial pleito, o será inadmisible**. (Énfasis suplido).

Ahora bien, cumplir con el análisis de la precitada Regla 805 (f) de Evidencia, *supra*, exige necesariamente que la prueba sea admisible para fines de la etapa de juicio. Sin embargo, aunque se incluyó una declaración jurada tal como exige la precitada regla, se hace impertinente examinarla a la luz de la Regla 902 (k) de Evidencia, *supra*, porque el informe en cuestión es prueba de referencia inadmisible. Así las cosas, no hace falta profundizar el análisis de cumplimiento al amparo de la Regla 902 (k) de Evidencia, *supra*.

Examinado el expediente en su totalidad, **concluimos que la peticionaria no demostró el cumplimiento de dos (2) de los requisitos de la Regla 805(F) de Evidencia, *supra*, a saber: (1) que el informe de investigación se preparó en una actividad de negocio realizada con regularidad y (2) que el informe se preparó como una práctica regular de dicha actividad de negocio.** A tenor con lo discutido, la parte peticionaria no rebatió con prueba admisible, ni nos puso en posición de concluir que el informe mismo cumpliera con los requisitos previamente esbozados. Así las cosas, concluimos que no se cumple con los propósitos que persiguen las Reglas de Evidencia, *supra*.

**Conviene señalar que, la peticionaria no alega ni establece que la contratación de un abogado externo en este tipo de asuntos y que la preparación del informe de investigación sean una actividad de negocio realizada con regularidad o que la**

**misma es una práctica regular de sus actividades de negocio.**[10]

Según se ha establecido por nuestro más alto foro, los fundamentos de esta excepción a la regla general de exclusión de prueba de referencia descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del documento. *Muñiz Noriega v. Muñoz Bonet, supra*, pág. 985. Es por ello, que reiteramos que quien pretenda producir un récord de negocios debe cumplir con las exigencias requeridas por nuestro ordenamiento jurídico. Por lo que es forzoso concluir que este informe no cumple los criterios de regularidad que se exigen en las prácticas de actividades de negocio y previamente precitados.

Ciertamente, recordamos que las declaraciones que constituyen prueba de referencia deben tomarse con cautela, ya que este tipo de evidencia presenta riesgos con respecto a la narración del evento, percepción del evento, recuerdo del evento y sinceridad del declarante. *Pueblo v. García Reyes, supra*, pág. 853-854. En este caso, la peticionaria presentó las declaraciones contenidas en el informe como parte de su evidencia para probar la justificación del despido, sin proveer documentación independiente alguna que sostenga lo declarado en dicho informe. La falta de documentación sobre eventos recientes que alegadamente dieron lugar al despido es, como mínimo, alarmante. Adviértase que en el caso de autos no se aportó prueba suficiente para demostrar que los hechos materiales se tornaran incontrovertidos según fueron expuestos por la peticionaria ante el foro de instancia.

Más aún, la información y declaraciones del informe no están corroboradas por evidencia independiente, por lo que genera dudas sobre su confiabilidad. Por ello es que, cuestionamos la falta de documentos necesarios para probar las alegaciones de la

---

[10] Apéndice 3, anejo 16 del Recurso de *Certiorari*, págs. 531-537.

peticionaria, o al menos del informe, tales como la carta de despido, la documentación de las quejas y evidencia del procedimiento llevado a cabo según exige los protocolos de First Medical, los correos electrónicos a los cuales se hace referencia, o cualquier otra evidencia que la apoye. Gran porción de la documentación presentada en la moción de sentencia sumaria trata sobre una queja de otra persona en el año 2013, que no es objeto del informe y que fue resuelta en su momento. Así pues, considerando todos los criterios jurisprudenciales ya examinados, entendemos que el informe inspira una falta de confiabilidad que incumple con los criterios de la jurisprudencia.

Adicionalmente, la información recopilada en el informe carece de importancia para el negocio fuera del contexto litigioso en el que se ofrece. No vemos cómo el informe aportaría un valor genuinamente comercial para los negocios de la empresa, más allá de su valor probatorio en el presente pleito. El hecho de que el informe se haya preparado para fines de litigación o potencial pleito la hace, de por sí solo, inadmisible. Por otro lado, el informe no se limita a información fáctica simple, sino que se trata de evaluaciones y conclusiones de hechos y de derecho. Particularmente, el informe provee argumentos sobre la Ley Núm. 90-2020, también conocida como "Ley para prohibir y prevenir el Acoso Laboral en Puerto Rico", 29 LPRA sec. 3111 et seq., como fundamentos para la recomendación del despido, basado en las evaluaciones sobre las entrevistas.

Los tribunales debemos emplear un análisis sobre la confiabilidad del récord presentado, tomando en consideración los criterios establecidos por la jurisprudencia. *H.R. Stationery, Inc. v. ELA, supra*, pág. 142. **En síntesis, la peticionaria no demostró que el informe de investigación rendido por el Lcdo. Pizarro sea parte de una actividad ordinaria de su negocio o que formara**

**parte de una práctica ordinaria de una actividad de negocio. El informe no cumple con los requisitos establecidos en la Regla 805(f) de Evidencia,** *supra,* **y tampoco con los criterios esbozados en la jurisprudencia interpretativa.** *Id.* Cónsono con lo anterior, resulta forzoso concluir que el Tribunal de Primera Instancia actuó conforme a derecho y no cometió el error señalado.

Los errores dos (2), tres (3) y cuatro (4), serán a discutidos en conjunto.

Sobre el segundo error, la peticionaria señaló que el foro recurrido erró y abusó de su discreción por no brindar deferencia a la investigación interna ni a la credibilidad de esta, toda vez que el informe desarrollado por First Medical no fue impugnado por la recurrida ni existe prueba de que haya sido basado en prejuicio, irrazonabilidad o arbitrariedad y que el Tribunal de Primera Instancia se inmiscuyó en dicha prerrogativa. El tercer error giró alrededor del argumento intimado por First Medical sobre que había errado el foro primario al determinar que no es aplicable localmente la doctrina federal de deferencia a investigaciones internas establecida por el Primer Circuito del Tribunal de Apelaciones Federal. Como penúltimo y cuarto error, First Medical señala que se equivocó el foro recurrido al resolver que la señora Rivera Rullán Rullán es acreedora de un debido proceso de ley durante la investigación interna conducida por First Medical. *No le asiste la razón.*

Iniciando con el segundo error, la peticionaria apela como fuente de autoridad el caso *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013), para advertirnos que nuestro más alto foro estableció que las decisiones gerenciales que atañen al despido están fuera del alcance adjudicativo de los Tribunales, porque de lo contrario estarían actuando como un "super departamento de personal". La controversia en *Zapata Rivera, supra,* es totalmente

distinguible a la de marras, nos explicamos. En el caso precitado, se estaba cuestionando la forma en que se desarrolló el proceso de reorganización y la prueba aportada por el patrono para justificar dicho proceso. Allí, el Tribunal Supremo de Puerto Rico, resolvió que los tribunales no podían convertirse en un "super departamento de recursos humanos" y dictaminar la forma en que los patronos efectúan las reorganizaciones de sus empresas. Esto es claramente distinto a la controversia que nos ocupa, pues First Medical solicita que se sostenga una presunta deferencia sobre un documento que constituye prueba de referencia inadmisible.

En línea similar, First Medical en su tercer error, señala que el Tribunal de Primera Instancia falló al resolver que no aplica la doctrina jurisprudencial federal del Primer Circuito sobre la deferencia a las investigaciones internas. Dicha doctrina no ha sido adoptada en nuestro estado de derecho, además que la jurisprudencia emitida en la esfera federal solo es persuasiva y de ninguna manera obligan a nuestros tribunales. Por lo que es inmeritorio discutir dicho error *in extenso*.

En su penúltimo error, la parte peticionaria discute que incidió el foro primario al concluir que la recurrida era merecedora de un debido proceso de ley durante la investigación realizada por First Medical. El Tribunal de Primera Instancia no abordó sobre este particular en la *Resolución* emitida. No obstante, como corolario de nuestro sistema revisor, es harto conocido que la revisión de un dictamen del Tribunal de Primera Instancia se da contra el resultado, no sus fundamentos. Es decir, nuestra función se encamina en confirmar que la determinación final del Tribunal de Primera Instancia se ajuste al estado de derecho.

Ahora bien, mediante la *Resolución* emitida por el foro recurrido, el Tribunal dictaminó que no se encontraba en posición para resolver mediante una sentencia sumaria presentada por First

Medical si el despido fue justificado o no. Toda vez que el informe vertido por el Lcdo. Pizarro no cumple con los requisitos de la Regla 805 (f) de las Reglas de Evidencia, *supra*.

Luego de evaluar minuciosamente los documentos que obran en el expediente ante nos, concluimos que existe controversia respecto a los hechos materiales previamente mencionados tales como si la señora Rivera Rullán había recibido acciones disciplinarias, si había cometido acoso laboral contra sus empleados en tiempo reciente o por el contrario fueron en tiempos remotos. Existe controversia sobre las entrevistas que el Lcdo. Pizarro llevó a cabo y sobre los alegados acosos recibidos por estas empleadas, toda vez que ese informe fue el utilizado para despedir a la señora Rivera Rullán, entre otros. Por estas razones, y conforme a la doctrina establecida por el Tribunal Supremo de Puerto Rico, existiendo controversias de hechos materiales y de derecho, no procedía resolver sumariamente el caso de autos. *No se cometieron los errores señalados.*

Finalmente, First Medical señala que erró el Tribunal de Primera Instancia al resolver que le correspondía al patrono rebatir el peso de la prueba para demostrar que el despido fue justificado. *Le asiste la razón.*

En síntesis, la peticionaria arguyó que la Ley Núm. 4-2017 eliminó la presunción de despido injustificado contenida en la Ley Núm. 80-1976 y que el peso de prueba ya no recae en el patrono sino en la recurrida al ser despedida posterior a dichas enmiendas. Por otro lado, la recurrida esgrimió que las enmiendas de la Ley Núm. 4-2017 tienen un efecto prospectivo sobre aquellos empleados contratados a partir de su vigencia, el 26 de enero de 2017, por lo que no le es aplicable a la recurrida.

Previo a las enmiendas de la Ley Núm. 4-2017, existía una presunción de que todo despido era injustificado y le imponía al

patrono el deber de demostrar, mediante preponderancia de la prueba, que hubo justa causa para el mismo. Según discutimos anteriormente, el precitado estatuto eliminó el lenguaje de presunción que contenía la Ley Núm. 80-1976, efectivamente eliminando dicha presunción y revirtiendo el peso de la prueba a la parte demandante. Ciertamente, este es un efecto prospectivo que se aplicará de acuerdo con el tiempo en que ocurrieron los hechos del caso. Específicamente, la disposición aplicable es la que estaba vigente al momento de los hechos que dieron lugar a la causa de acción por despido injustificado, conforme resolvió el Tribunal Supremo de Puerto Rico en *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 781 (2022).

**Es decir, si el despido ocurrió antes de la referida fecha, la parte reclamante podrá valerse de la presunción y el peso de la prueba sobre la justa causa del despido recaería en el patrono. En cambio, aquellos despidos ocurridos posterior a la vigencia de la Ley Núm. 4-2017, el 26 de enero de 2017, los empleados no tendrán el beneficio de la presunción de despido injustificado al estar sujetos a las enmiendas de dicha legislación.** En el caso de *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra,* el demandante fue contratado y despedido antes de las enmiendas de la Ley Núm. 4-2017 y, por tanto, era de aplicación la presunción de despido injustificado.

Por otro lado, en el caso de autos, la recurrida fue contratada el 3 de mayo de 1999. Su eventual despido ocurrió el 20 de mayo de 2022, lo que significa que fue posterior a la vigencia de las enmiendas de la Ley Núm. 4-2017. La causa de acción de la señora Rivera Rullán surgió luego de la vigencia de la Ley Núm. 4-2017, por lo que no le es aplicable la presunción de despido injustificado y el peso de la prueba recae en la recurrida ante el nuevo estado de derecho. Ante ello, concluimos en que el Tribunal de Primera

Instancia erró al concluir que le correspondía a First Medical el peso de demostrar que el despido fue justificado pues, debido a la fecha de la determinación, dicho esquema probatorio es inaplicable al caso de autos. En consecuencia, concluimos que el Tribunal de Primera Instancia *sí cometió el error señalado.*

**IV**

Por los fundamentos antes expresados, los cuales hacemos formar parte de esta *Sentencia, expedimos* el auto de *Certiorari* solicitado y modificamos la *Resolución* recurrida, emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón a los fines de resolver que toda vez que el despido se efectuó posterior a la vigencia de la Ley Núm. 4-2017, *supra,* le corresponde a la señora Rivera Rullán demostrar que el despido fue injustificado. Así modificada, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones